UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CRISTHIAN HERRERA CARDENAS,  )
*et al.*,                     )
                             )
    Plaintiffs,              )
                             )
    v.                       )    Case No. 1:22-cv-00801-TWP-DML
                             )
U.S. IMMIGRATION AND CUSTOMS )
ENFORCEMENT (ICE), *et al.*, )
                             )
    Defendants.              )

**BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendants, Clay County, Indiana, the Clay County Council, the Clay County Board of Commissioners, the Clay County Jail, the Clay County Sheriff's Office, Paul B. Harden, in his official capacity as Clay County Sheriff, Jackie Mitchell, Jason Britton, Jason Thomas, Larry J. Moss, John Nicoson, Dave Amerman, and Patricia Heffner, all in their official capacity as Clay County Council Members, Bryan Allender and Marty Heffner, in their official capacity as Clay County Commissioners, Paul Sinders, in his official capacity as President of the Clay County Board of Commissioners, Elizabeth Hughett, David Parker, and Jase Glassburn, in their official capacity as Clay County Sergeants and ICE Contract Coordinators, Jennifer M. Flater, in her official capacity as Clay County Auditor, and Debra James, in her official capacity as Clay County Treasurer (collectively, the "Clay County Defendants"), by counsel, under Rule 12(b)(6) of the Federal Rules of Civil Procedure respectfully submit this brief in support of their request that the Court dismiss the Complaint filed by Plaintiffs, Cristhian Herrera Cardenas, et al. (collectively, "Detainees").

**INTRODUCTION**

Clay County entered a federal, form contract (USM-241) ("Agreement") with the federal government to house federal detainees at the Clay County Jail, and the federal government reimburses Clay County a per diem for each detainee. Detainees contend the federal Agreement and federal laws, regulations, and guidance require Clay County to spend the per diem in particular ways and because Clay County is allegedly not doing so the jail conditions are substandard.

This Court should dismiss the claim against the Clay County Defendants for two reasons. First, the Detainees have named Clay County itself as defendant. The other 19 Clay County boards, elected officials, employees, and even a building are duplicative and should be dismissed. *See Ball v. City of Muncie*, 28 F. Supp. 3d 797, 802 (S.D. Ind. 2014) (dismissing claim against Muncie's mayor "because the City of Muncie is the real party in interest here"). Moreover, the vast majority of the Clay County Defendants are not parties to the Agreement, and there is no basis for them to be defendants for this claim.

Second, federal law governs this dispute. Under federal law, Detainees lack standing to sue under the Agreement, though the same is true under Indiana law as well. Other federal courts have reached the same conclusion under the same form contract. Detainees' claims fail as a matter of law. Where conditions warrant it, jail detainees can directly challenge the conditions of their confinement through a Constitutional challenge or they could file a grievance within the jail system itself. Detainees have chosen not to follow either of these paths for whatever reason. But this choice does not entitle them to piggy-back claims on a contract to which they are neither a party nor a third-party beneficiary. This Court should dismiss Count III.

## I.    Background

### Contract to House Federal Detainees at the County Jail

In 2006, Clay County entered the Agreement with the United States Marshals Service to house federal detainees at the Clay County Jail. (Dkt. 1-1 p.2.) The Agreement is a form federal contract (USM-241). *Id.* The federal government would reimburse Clay County a fixed per diem rate of $45 per detainee. (*Id.*) "The rate covers one (1) person per 'prison day.'" (*Id.* at p.4.) The Complaint alleges that Clay County is improperly spending the per diem, resulting in allegedly poor jail conditions. (Complaint ¶ 280.)

The Agreement has extensive terms relating the use of per diem amounts:

---

ARTICLE VIII - SUPERVISION AND MONITORING RESPONSIBILITY

All recipients receiving direct awards from the USMS are responsible for the management and fiscal control of all funds. Responsibilities include the accounting of receipts and expenditures, cash management, the maintaining of adequate financial records, and the refunding of expenditures disallowed by audits.

ARTICLE IX - ACCOUNTING SYSTEMS AND FINANCIAL RECORDS

1.    The recipient shall be required to establish and maintain accounting systems and financial records that accurately account for the funds awarded. These records shall include both federal funds and all matching funds of state, local, and private organizations. State and local recipients shall expend and account for funds in accordance with state laws and procedures for expending and accounting for its own funds, as well as meet the financial management standards in 28 Code of Federal Regulations (CFR), Part 66, and current revisions of OMB Circular A-87.

2.    Recipients are responsible for complying with OMB Circular A-87 and 28 CFR, Part 66, and the allowability of the costs covered therein (submission of Form USM-243). To avoid possible subsequent disallowance or dispute based on unreasonableness or unallowability under the specific cost principles, recipients must obtain prior approval on the treatment of special or unusual costs.

---

(Dkt. 1-1 p.5.)

The Agreement is clear that the "*USMS* will hold recipient accountable for any overpayment, audit disallowance or any breach of this agreement":

> ### ARTICLE X - MAINTENANCE AND RETENTION OF RECORDS AND ACCESS TO RECORDS
>
> 1.  In accordance with 28 CFR, Part 66, all financial records, supporting documents, statistical records, and other records pertinent to contracts or sub-awards awarded under this IGA shall be retained by each organization participating in the program for at least three (3) years for purposes of federal examination and audit.
>
> 2.  The 3-year retention period set forth in paragraph one (1) above, begins at the end of the first year of completion of service under the IGA. If any litigation, claim, negotiation, audit, or other action involving the records has been started before the expiration of the 3-year period, the records must be retained until completion of the action and resolution of all issues which arise from it or until the end of the regular 3-year period, whichever is later.
>
> 3.  Access to Records: The USMS and the Comptroller General of the United States, or any of their authorized representatives, shall have the right of access to any pertinent books, documents, papers, or other records of recipients or its sub-recipients/contractors, which are pertinent to the award, in order to make audits, examinations, excerpt, and transcripts. The rights of access must not be limited to the required retention period, but shall last as long as the records are retained.
>
> 4.  Delinquent Debt Collection: The USMS will hold recipient accountable for any overpayment, audit disallowance, or any breach of this agreement that results in a debt owed to the Federal Government. The USMS may apply interest, penalties, and administrative costs to a delinquent debt owed by a debtor pursuant to the Federal Claims Collection Standards.

(Dkt. 1-1 p.6) (emphasis and highlighting added). The Marshals Service is to enforce any disallowed costs or breach of contract, not the detainees themselves.

In 2014, the Agreement was amended to provide for Immigration and Customs Enforcement ("ICE") to detain people at the Clay County Jail. (Dkt. 1-1 p.9.) In 2015, the Agreement was modified to provide a per diem rate of $55. (Dkt. 1-2 p.2.)

### Allegations in the Complaint

In the Complaint, Detainees complain about the conditions at the Clay County Jail, but they do not claim that the conditions violate the Constitution of the United States.

Count III is the only count against the Clay County Defendants. Detainees seek "a declaration of their rights, status, or other legal relations under the Agreement." (Complaint ¶ 280.) They argue Clay County should spend more money on them and less money on other things, like air conditioning at the courthouse, employee salaries, etc. (*Id.* ¶ 5.) Detainees then allege that the "Clay County Defendants' use of substantial portions of the federal funds paid under the Agreement for expenses and discretionary expenditures unrelated to the care and

4

custody of Plaintiffs and the other Class members violates the Agreement and federal law incorporated therein." (Complaint ¶ 280.) Detainees seek a declaration that "[a]ny federal funds paid to the County pursuant to the Agreement are required by law and the terms of the Agreement to be used for Plaintiffs' custody and care." (*Id.*) There are no allegations in the Complaint that Detainees are parties to the Agreement or that they are third-party beneficiaries to the Agreement.

## II.   Analysis

### A.  Legal standard

"Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject-matter jurisdiction." *Westfield Ins. Co. v. Kuhns*, 2011 WL 6003124, at *1 (S.D. Ind. Nov. 30, 2011). "If subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). "If the plaintiff lacks standing, the federal court lacks subject matter jurisdiction and the suit must be dismissed under Rule 12(b)(1)." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017).

In ruling on a motion to dismiss under Rule 12(b)(6), "[w]e construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all reasonable inferences in the plaintiff's favor, but we need not accept as true statements of law or unsupported conclusory factual allegations." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021) (internal quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (internal quotation omitted). "When a contract is attached to the pleadings, we may look beyond the pleadings and look at that contract to determine whether the motion to dismiss was properly granted." *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999).

### B. This Court should dismiss duplicative defendants who are not parties to the Agreement.

Detainees have named Clay County as a defendant, along with a host of elected officials, boards, county employees, all in their official capacities, and even the jail itself. (Complaint ¶¶ 50-58.) The only relief Detainees seek from Clay County is a declaratory judgment that per diem amounts must "be used for Plaintiffs' custody and care." (Complaint ¶ 280.) The only necessary party for this claim is the County itself. The claims against the boards, elected officials, employees, and a building are duplicative and should be dismissed. Moreover, the allegation against Clay County is that it has spent funds in violation of the Agreement. Nonparties to the Agreement should be dismissed.

Clay County is a political subdivision of the State of Indiana. Ind. Code §§ 36-1-2-10, 13, 23. It is run by its elected officials, which include a board of commissioners and a county council. The county council "is the county fiscal body." Ind. Code § 36-2-3-2. Under Indiana law, the "power of making appropriations was given exclusively to the county council with the apparent intent that the exercise of powers by the county council would benefit taxpayers by providing a check on the expenditure of public money." *Happy Valley LLC v. Madison Cnty. Bd. of Commissioners*, 133 N.E.3d 193, 198 (Ind. Ct. App. 2019). "The county fiscal body shall appropriate money to be paid out of the county treasury," and "money may be paid out of the treasury only under an appropriation made by the fiscal body." Ind. Code § 36-2-5-2(b).

The board of county commissioners "is the county executive." Ind. Code § 36-2-2-2. "The county commissioners function as the executive branch of local government and execute the directives of the fiscal body." *Happy Valley*, 133 N.E.3d at 198. "[C]ounty commissioners enter into contracts with vendors in furtherance of local government purposes and objectives." *Id.* The board of county commissioners "establish and maintain a . . . county jail." Ind. Code § 36-2-2-24(a).

A county treasurer "shall receive money to which the county is entitled and shall disburse it on warrants issued and attested by the county auditor." Ind. Code § 36-2-10-9. A county auditor "performs the duties of clerk of the county executive," Ind. Code § 36-2-9-7(a), and "shall keep a separate account for each item of appropriation made by the county fiscal body," Ind. Code § 36-2-9-13(a), among other duties. A sheriff is charged with taking "care of the county jail and the prisoners there." Ind. Code § 36-2-13-5(a)(7). The sergeants are "County employees." (Complaint ¶ 58.) All of the Clay County defendants are named in their official capacities. (Complaint ¶¶ 50-59.)

As the Supreme Court of the United States has held, "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation omitted). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original). Similarly, in this case, the only real party in interest is Clay County.

As the Seventh Circuit has concluded, a "suit against the Sheriff in his official capacity is treated as a suit against the County." *Bridges v. Dart*, 950 F.3d 476, 478 n.1 (7th Cir. 2020). This

7

Court has come to the same conclusion and dismissed officials sued in their official capacities as duplicative of a suit against the entity itself. In *Ball*, 28 F. Supp. 3d at 802, the plaintiff sued the "Mayor of Muncie" and "the City of Muncie itself." Defendants sought "dismissal on grounds that the claims are duplicative." This Court agreed: "As Defendants have correctly noted, the claims against Tyler in his official capacity as Mayor of Muncie and the claims against the City of Muncie itself are redundant." *Id.*

The Northern District of Indiana has come to the same conclusion. In *Moreno-Avalos v. City of Hammond Indiana*, 2017 WL 57850 *1 (N.D. Ind. Jan. 4, 2017), the plaintiff named the City of Hammond as a defendant, along with the mayor and other officials in their official capacities. The defendants moved to dismiss the official capacity defendants as duplicative. *Id.* The Northern District held that "[i]f a plaintiff brings suit against a government entity, any claim against an officer of that entity in his or her official capacity is redundant and should be dismissed." *Id.* (collecting cases coming to the same conclusion). The Court reasoned that plaintiff's "argument that her official capacity claims against the individual defendants are not duplicate causes of action misses the point. All of the above-quoted caselaw deals with plaintiffs suing municipalities in addition to government employees, and the courts ruled that the individuals sued in their official capacity should be dismissed as redundant." *Id.* at *3. The Court held that the "claims against the individual defendants sued in their official capacity should be dismissed as duplicative of the claims against the City of Hammond." *Id.*

The same result should occur here. Detainees have named Clay County as a defendant. The claims against the Board of Commissioners, the Commissioners themselves, the Clay County Council, the Councilors themselves, the Sheriff's office, the Sheriff himself, the County

Auditor, the County Treasurer, County employees, and the jail are duplicative and should be dismissed because they are really claims against the County. *Ball*, 28 F. Supp. 3d at 802.

Moreover, Count III only seeks a declaration of rights under the Agreement. (Complaint ¶ 280.) There is no conceivable basis to argue (and there is no allegation) that the County Auditor, the County Treasurer, or County employees are parties to the Agreement. The federal Declaratory Judgment Act, which as explained in Section C(1) applies, requires that both plaintiffs and defendants be "interested part[ies]." 28 U.S.C. § 2201. In *Stavanger Holdings, LTD v. Tranen Capital, LTD.*, 2012 WL 6114894 at *3 (S.D. Ind. Dec. 10, 2012), the "Tranen Defendants move to dismiss the breach of contract claim against them on the ground that they are not parties to the Contract." This Court held as follows:

> Thus, while there may be circumstances in which someone who is not a party to a contract may be bound by it, the Plaintiffs here have not pled facts that demonstrate that it is plausible [and] that this is such a circumstance. Accordingly, the motion to dismiss is **GRANTED** with regard to the reach of contract claim against the Tranen Defendants.

*Id.* at *4.

In this case, the Auditor, Treasurer, and County employees are not alleged to be parties to the Agreement. Detainees name the Auditor because she "is responsible for directing payments of County funds *as directed by the County Council*." (Complaint ¶ 59) (emphasis added).  The Treasurer is named because she "is charged with receiving money." (*Id.* ¶ 60.) The employees are sued because "they also serve as ICE Contract Coordinators." (*Id.* ¶ 58.) None of these individuals are parties to the Agreement. There are no substantive allegations about these defendants. As a result, Detainees have not pled facts that demonstrate that this is a circumstance where they are proper defendants to a declaratory judgment claim asking for a declaration of rights under a contract to which

they are not parties. Therefore, they should be dismissed as defendants. *Stavanger*, 2012 WL 6114894 at *4.

In sum, Clay County, as the county, is the only proper defendant; all other Clay County Defendants should be dismissed.

### C. Detainees lack standing to raise their contract-based claims.

Substantively, Detainees allege that federal law, regulations, guidance, and the federal form Agreement supposedly require Clay County to expend reimbursed per diem amounts in particular ways. Federal law governs this dispute. Under federal law, Detainees lack standing to raise their claims (the same is true under Indiana law). This Court should dismiss Count III.

Notably, Detainees complain about the conditions at the Clay County Jail, but they do not bring a claim that the conditions violate their Constitutional rights. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). "It is undisputed that Border Patrol holds the Plaintiffs as civil detainees, pursuant to civil immigration laws, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), therefore, they are protected under the Fifth Amendment from being held without due process of law under conditions that amount to punishment." *Unknown Parties v. Johnson*, 2016 WL 8188563, at *4 (D. Ariz. Nov. 18, 2016), *clarified on denial of reconsideration*, 2017 WL 467238 (D. Ariz. Jan. 3, 2017), *aff'd sub nom. Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017), and *aff'd sub nom. Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017).

Detainees could have brought claims that their detention violates the Constitution, but they have chosen not to do so, presumably because the conditions do not violate the Constitution.

10

But this does not mean that Detainees can bring claims under inapplicable statutes or regulations, or under a contract to which they are neither a party nor third-party beneficiary.

### 1. Federal procedural rules control this dispute.

Initially, Detainees purport to bring their declaratory claim under Indiana procedural rules. (Complaint ¶¶ 277-79.) This is wrong. This Court has concluded that Indiana's Declaratory Judgment Act is a procedural statute that does not apply in diversity jurisdiction cases. *Consolidated City of Indianapolis v. Ace Ins. Co. of N. American*, 2004 WL 2538648, *2 n.1 (S.D. Ind. Sep. 20, 2004) (noting that the "City, in its complaint, claims entitlement to declaratory relief pursuant to the Indiana Declaratory Judgments Act," but "sitting in diversity, the Court applies state substantive law and federal procedural law"). Likewise, if Count III was properly before this Court under supplemental jurisdiction, "federal procedural law [would apply] . . . when, as in this case, a federal court considers state law claims pursuant to 28 U.S.C. § 1367." *D.S. v. East Porter Cnty. Sch. Corp.*, 981 F. Supp. 2d 805, 815 (N.D. Ind. 2013). The Indiana Declaratory Judgment Act does not apply; the Court should proceed under the umbrella of federal procedure.

### 2. Federal substantive law controls this dispute.

The Agreement at issue in this case is a federal-form contract (USM-241) entered into between the federal government and Clay County to house federal detainees. Detainees claim that a host of federal laws and regulations (18 U.S.C. § 4013(a), 2 C.F.R. § 200.300, etc.) allegedly require Clay County to expend reimbursed per diem amounts in particular ways. Federal law governs this dispute.

"It is well-established that government contracts are governed by federal common law." *Excel Willowbrook, L.L.C. v. JP Morgan Chase Bank, Nat. Ass'n*, 758 F.3d 592, 598 n.6 (5th Cir.

2014). The Ninth Circuit has similarly held that "[f]ederal law controls the interpretation of a contract entered pursuant to federal law when the United States is a party." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), *opinion amended on other grounds on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000). "Federal common law governs the interpretation of federal government contracts." *Winebarger v. Pennsylvania Higher Education Assistance Agency*, 411 F. Supp. 3d 1070, 1092 n.13 (C.D. Cal. 2019). The Ninth Circuit has held that when a "federal interest [is] so dominant" that "the need for a uniform federal rule" requires "even the question [of] whether a third-party beneficiary may sue under the contract . . . [be] governed by federal common law." Caltex Plastics, Inc. v. Lockheed Martin Corp., 824 F.3d 1156, 1159-60 (9th Cir. 2016) (first alteration in original).

The Seventh Circuit has addressed a similar issue and come to a similar conclusion. In *Downey v. State Farm Fire & Casualty Co.*, 266 F.3d 675, 678 (7th Cir. 2001), the plaintiff bought a flood insurance policy from State Farm, and State Farm denied an indemnity claim under it. The Seventh Circuit began its analysis by noting that "[o]ur ears pricked up at the assertion that this suit belongs in federal court, for a contract dispute between two private parties typically does not arise 'under the Constitution, laws, or treaties of the United States.'" *Id.* (quoting 28 U.S.C. § 1331). The parties asserted that federal question jurisdiction was appropriate because of "the nature of insurance" because "Downey bought his policy through the National Flood Insurance Program (NFIP)." *Id.*

After rejecting that the plaintiff had a cause of action against State Farm under a federal statutes, the Seventh Circuit concluded that "[t]his is not the end of the jurisdictional inquiry" because "[s]ometimes the federal interest in a controversy is so dominant that federal law applies—activating federal-question jurisdiction under § 1331—even if the national government

is not a party." *Id.* at 680. The Seventh Circuit then joined "[e]very other circuit that has considered this issue" and held that "because the NFIP is a federal program, uniform judicial interpretations of the standard insurance policy are necessary." *Id.*

The Court then held that federal common law applied to interpretation of the insurance policy: "when the duties or rights of the United States are at stake under a federal program, that federal interest requires the application (and if necessary the creation) of federal law." *Id.* at 681. "If FEMA were the defendant in our case, we would have no doubt that federal law applied: Just like the agencies in *Kimbell Foods*, FEMA runs a federal program, and because it bears the risk on all NFIP contracts, FEMA's duties are at issue whenever an NFIP policy is interpreted." *Id.*

In this case, the Agreement at issue is a federal form contract (USM-241) entered with the United States Government, and the United States Government is a party to this case, a factor which the Seventh Circuit concluded would leave it with "no doubt that federal law applied." *Id.* Detainees seek a declaration regarding how jails can spend federal per diem reimbursements under this federal form contract and under federal law, regulations, and guidance. This creates, in the Seventh Circuit's words, a situation where "the duties or rights of the United States are at stake under a federal program," which requires "the application (and if necessary the creation) of federal law." *Id.* at 681. The substance of this suit would affect how federal per diem dollars can be spent and that affects the "rights of the United States" and requires "uniform judicial interpretation." *Id.* at 680. Federal per diems cannot be required to be spent differently in Indiana and Illinois. Federal substantive law applies to this case.

Likewise, whether detainees can sue at all under the Agreement must be uniform across the country. As the Ninth Circuit has held, "the need for a uniform federal rule" requires that "even the question [of] whether a third-party beneficiary may sue under the contract . . . [be]

13

governed by federal common law." *Caltex Plastics*, 824 F.3d at 1159-60. Detainees cannot be allowed to sue as third-party beneficiaries in Maine but not Michigan. Consequently, federal law controls whether Detainees can sue under the Agreement.

### 3. Detainees lack standing to seek a declaratory judgment under the Agreement.

Detainees are neither parties to the Agreement nor are they third-party beneficiaries. Other federal courts have rejected that federal detainees or prisoners could bring suit under the same form contract. This Court should dismiss Count III because detainees lack standing.

Detainees are not parties to the Agreement, and therefore, they cannot seek a declaratory judgment under it. "Parties who lack standing to enforce an agreement also lack standing to seek a declaration of rights under the contract" *Eaton Vance Mgmt. v. ForstmannLeff Associates, LLC*, 2006 WL 2331009, *6 (S.D.N.Y. Aug. 11, 2006). "The Declaratory Judgment Act provides a cause of action only to those seeking a declaration of their own legal rights." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 772 n.2 (7th Cir. 2013). In a dispute over an excess insurance policy, the Seventh Circuit wrote that the "declaratory-judgment action concerns only the legal rights of the parties to the excess policy. Edgewood Manor did not receive an assignment of the insurance claim when it purchased the apartment complex and may not sue to enforce Southland's rights against RSUI." *Id.* at 771-72. "The district court properly dismissed Edgewood Manor's claim for lack of standing." *Id.*

The Northern District of Illinois has determined that a party "lack[ed] standing to bring a breach of contract claim against Carolina because it is not a party to the policy. Nor could it seek a declaratory judgment against Carolina." *Carolina Cas. Ins. Co. v. Merge Healthcare Inc.*, 2011 WL 3921412 *3 (N.D. Ill. Sep. 6, 2011). Similarly, in *American General Financial Services of Illinois, Inc. v. Riverside Mortgage Company, Inc.*, 2005 WL 1211583 *4 (N.D. Ill. May 19,

2005), "plaintiff has not shown that it is a party to the contract, that it is in privity with the parties or that it is a third-party beneficiary." "Simply put, American General Illinois has not established all of the essential elements of its breach of contract claims or the right to seek declaratory relief under the contract." *Id.* "Plaintiff seeks an order declaring the lease null and void *ab initio*. Plaintiff does not have standing to request a declaration that the lease is null and void. He is not a party to the lease." *Mac Naughton v. Harmelech*, 2018 WL 11249347 *2 (N.D. Ill. April 5, 2018).

Detainees also lack standing to bring Count III because they are not third party beneficiaries of the Agreement. "It is a well-established principle that '[g]overnment contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries [who may not enforce a contract] unless a different intention is manifested.'" *MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 491 (1st Cir. 2013) (quoting Restatement (Second) of Contracts § 313 (1981)) (alteration in original). "Thus, third parties to government contracts 'are generally assumed to be incidental beneficiaries.'" *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 933 (11th Cir. 2013) (quoting *Klamath*, 204 F.3d at 1211). "To overcome this presumption, [the third party] must show that the parties clear[ly] inten[ded] that [the third party] be permitted to sue to enforce the" agreement. *Id.* (internal quotation omitted).

"A third party that wishes to sue under a government contract must demonstrate that it is an intended beneficiary of the contract, rather than merely an incidental one." *Caltex*, 824 F.3d at 1160. "This is a comparatively difficult task: a party that benefits from a government contract is presumed to be an incidental beneficiary, and that presumption may not be overcome without showing a clear intent to the contrary." *Id.* (internal quotation omitted).

15

In *Winebarger*, 411 F. Supp. 3d 1070, 1092, the district concluded plaintiff failed to state a claim for breach of contract under a government contract because they "failed to allege facts showing a 'clear intent' necessary to rebut the presumption that they are mere incidental beneficiaries under the Servicing Contracts." *Id.* at 1092.

The United States Court of Federal Claims has addressed a remarkably similar case to this one, namely, where a federal detainee in a county jail tried to sue under the same federal form contract at issue here, USM-241, related to the conditions of his confinement and levels of service provided by the jail. *Cash*, 2015 WL 194353 at *1; *see also* (Dkt. 10-1 Case 1:14-cv-00510-NBF) (USM-241 contract from *Cash*).

The Court rejected Cash's third-party beneficiary claim under USM-241: "After considering the arguments in the parties' briefs, the court finds that it must agree with the government that plaintiff is not an intended third-party beneficiary and, therefore, that there is no waiver of sovereign immunity and this court does not have subject matter jurisdiction over his claim." *Cash*, 2015 WL 194353 at *2. The court concluded that "before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit." *Id.* (quoting *German Alliance,* 226 U.S. 220, 230 (1912)).

In examining the contract between the Marshals Service and the County Authority, the court recognized "that it was entered into to provide housing to federal prisoners and did not give prisoners any special rights." *Id.* In particular, the agreement stated that its purpose is to provide for the "detention of persons charged with or convicted of violations of federal law or held as material witnesses (federal prisoners) at the [County Authority] facility." *Id.* In exchange for payment and subject to certain restrictions, the County Authority in *Cash* agreed to "accept and

16

provide for the secure custody, care and safekeeping of federal prisoners in accordance with federal, state, and local law, standards, policies, procedures, or court orders applicable to the operations of the facility." *Id.* The court noted that while the agreement provided certain minimum standards for the confinement of the prisoners—which did not include protection of prisoners from other prisoners—it was clear that the principal intent of the agreement was "to house the prisoners in a way that keeps the public safe and that the minimum standards are designed for this purpose." *Id.* The court held that nothing in the agreement "was intended to give prisoners the right to enforce the agreement or sue the United States in the event the United States Marshals Service failed to inspect the County facility or protect individual inmates from other inmates." *Id.* Finding that Cash was not an intended third-party beneficiary of the agreement but rather, at best, an incidental beneficiary, the court found it had no jurisdiction and dismissed the matter. *Id.* at *2-3.

In *Stile v. Dubois*, 2019 WL 3317322 *1 (D. N.H. July 24, 2019), a former federal former detainee sued, alleging breach of a "housing agreement" the Marshals Service and the county (which notably was signed by same federal official who signed the Agreement in this case) *Compare* Dkt. 1-1 p.2, *with Stile*, 2019 WL 3317322 at *1. The district court concluded that "the housing agreement includes no express or implied intent that federal detainees at SCDC, like Stile, are able to enforce its provisions against Strafford County," and transportation "requirements are not for the benefit of the detainee, but instead are intended to maintain the secure detention of detainees during transport for the benefit of the Marshals Service." *Id.* at *3.

17

The same result should occur here under the substantially same form contract.[1] In the Complaint, Detainees allegations against Clay County focus on how Clay County spends the per diem: "Any federal funds paid to the County pursuant to the Agreement are required by law and the terms of the Agreement to be used for Plaintiffs' custody and care." (Complaint ¶ 280.) The Detainees are not third-party beneficiaries of the Agreement or its funding provisions. The purpose of the per-diem is to reimburse Clay County's "actual and allowable costs." (Dkt 1-1 p.4; Agreement Art. VI(1).) This is to reimburse Clay County for a costs it already incurred, not to benefit detainees.

The Agreement also addresses Clay County's responsibility for accounting for funds and what would happen if Clay County misused funds. None of these provisions involve or benefit detainees or support any inference that Detainees are a third-party beneficiary of these provisions. The Agreement provides that Clay County is "responsible for the management and fiscal control of all funds." (Dkt. 1-1 p.5; Agreement Art. VIII.) The Agreement continues that the "[r]esponsibilities include the accounting of receipts and expenditures, cash management, the maintenance of adequate financial records, and the refunding of expenditures disallowed by audits." (*Id.*)

The Agreement provides that the federal government is to enforce misuse of funds. "The ***USMS will hold recipient accountable*** for any overpayment, ***audit disallowance***, or ***any breach*** of this agreement ***that results in a debt owed to the Federal Government***." (Dkt. 1-1 p.6; Agreement Art. X(4)) (emphases added). The federal government would hold Clay County

---

[1] While the Contract at issue in *Cash* is the materially identical form contract, the Agreement that Detainees attached to the Complaint (Dkt. 1-1) begins at number 3 on page 2 and appears to not include Articles I through III.  It is not clear why there is this discrepancy.

accountable for any audit disallowance, and if there is a debt owed, it is owed "to the Federal Government." And the federal government enforces "any breach."

Detainees do not allege in the Complaint that they are third party beneficiaries of the Agreement. The funding provisions that form the basis of Detainees allegations do not give any indication "that it was intended to give prisoners the right to enforce[] the agreement." *Cash*, 2015 WL 194353 at *3. As a result, Detainees have failed to "overcome th[e] presumption" that they are merely incidental beneficiaries under the Agreement and they have not shown it was clearly intended that they be permitted to sue under it. *Interface*, 704 F.3d at 933. This is especially true since the court in *Cash* interpreted the same form agreement as not providing a prisoner with third-party beneficiary status.

While Detainees couch their Complaint in terms of alleged misuse of per diem reimbursements, they allege the misuse "has prevented the Jail from providing adequate conditions under the PBNDS." (Complaint ¶ 280.) But nothing in Performance-Based National Detention Standards ("PBNDS") creates third-party beneficiary status for Detainees in this case. The PBNDS, therefore, does not "overcome th[e] presumption" that Detainees are merely incidental beneficiaries under the Agreement and they have not shown it was clearly intended that they be permitted to sue under it. *Interface*, 704 F.3d at 933.

Confirming that the PBNDS is not meant to be enforced through contract claims based on funding levels, the PBNDS requires jails to implement extensive grievance procedures. PBNDS § 6.2 (Grievance System), available at https://www.ice.gov/doclib/detention-standards/2011/6-2.pdf. The purpose of these grievance procedures is to "protect[] a detainee's rights and ensure[] that all detainees are treated fairly." (*Id.* p.1.) Detainees must be given at least two levels of appeals at the local level, and "[f]acilities shall allow any ICE/ERO detainee dissatisfied with the

19

facility's response to a grievance or those fearing retaliation to be able to appeal or communicate directly with ICE . . . ." (*Id.*) The lack of any language in the Agreement conferring third-party beneficiary status to enforce the PBNDS through a contract claim, combined with PBNDS's detailed grievance procedure to "protect[] a detainee's rights," confirms that neither the federal government nor Clay County intended detainees to be third-party beneficiaries who could enforce the Agreement in Court.

**4. Detainees lack standing to seek a declaratory judgment under Indiana law, in the event that matters.**

The same result occurs under Indiana law as well, should that apply. This Court has dealt with this issue many times in regard to contracts between the state of Indiana and prison service providers. In those cases, involving state contracts, this Court has applied Indiana law. Inmates at facilities have repeatedly tried to bring breach of contract claims based on jail service contracts, and Federal courts in Indiana have repeatedly rejected such claims under Indiana law. While this case should be governed by the federal presumption that Detainees are merely incidental beneficiaries, they lose under Indiana law, too.

For example, in *Harper v. Corizon Health Inc.*, 2018 WL 6019595 *8 (S.D. Ind. Nov. 16, 2018), a prisoner claimed that a medical provider "breached its contract with the IDOC by failing to properly train its medical personnel and that Mr. Harper is a third-party beneficiary to that contract." This Court quoted the Indiana Supreme Court for Indiana's law on third-party beneficiaries:

> To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed. The intent of the contracting parties to bestow rights

> upon a third party must affirmatively appear from the language of the instrument when properly interpreted and construed.

*Id.* (quoting *Cain v. Griffin*, 849 N.E.2d 507, 514 (Ind. 2006)). Like the federal common law, the Indiana Supreme Court has established a challenging standard under Indiana law, namely, that the intent to make a person a third-party beneficiary "must affirmatively appear" in the contract.

This Court concluded that "[w]hile there is no dispute that the performance of the contract, produced at dkt. 54-1, was to be of benefit to the inmates of IDOC, the intent of the contracting parties to bestow rights upon Mr. Harper does not affirmatively appear from the language of the instrument." *Id.* This Court concluded that while the contract at issue provided that the contractor "shall provide comprehensive medical services, including dental, medical, mental health and substance abuse, to offenders at IDOC correctional facilities," "[t]his is not an affirmative statement of any intent to bestow rights upon the inmates at IDOC. Nor is there an affirmative statement in any part of the contract to show an intent to bestow rights on the inmates." *Id.*; *see, e.g., Weaver v. Wexford Health Sources, Inc.*, 2021 WL 1175257 (S.D. Ind. March 29, 2021); *Penrod v. Quality Correctional Care LLC*, 2020 WL 564163 *3 (N.D. Ind. Feb. 5, 2020); *Barnett v. Wexford Health Sources, Inc.*, 2019 WL 6909581 *7 (S.D. Ind. Dec. 19, 2019). These cases can be decided on motions to dismiss. *See Larue v. Mills*, 2019 WL 3195140, *6 (N.D. Ind. July 15, 2019).

For Detainees to be able to sue to enforce the Agreement, "it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party." *Harper v. Corizon*, 2018 WL 6019595, *8 (S.D. Ind. Nov. 16, 2018) (internal quotation omitted). Nothing in these funding provisions demonstrates any intent to benefit Detainees. Rather, the purpose of per diem amounts is to reimburse Clay County for

21

expenses, and the federal government polices whether money has been properly expended, with refunds going to the federal government.

"The intent of the contracting parties to bestow rights upon a third party must affirmatively appear from the language of the instrument when properly interpreted and construed." *Harper*, 2018 WL 6019595 at *8 (internal quotation omitted). Nothing in the funding provisions reflects any intent "to bestow rights upon" Detainees, and no intent to create third-party beneficiaries "affirmatively appear[s] from the language of the instrument." *Id.*

### 5. None of the authorities cited by Detainees require Clay County to expend funds in any particular manner.

Beyond the threshold contract issue, Detainees failed to state a claim for relief. They claim that six federal statutes, regulations, or guidance documents require Clay County to expend funds in a particular matter under the form federal Agreement. The cited authorities impose no such restriction.

First, Detainees cite 2 C.F.R. § 200.300(a). (Complaint ¶ 64.) That regulation provides that "[t]he Federal awarding agency must manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, Federal Law, and public policy requirements." 2 C.F.R. § 200.300(a). This regulation is a directive to "[t]he Federal awarding agency," not Clay County. And it refers to the Constitution, Federal Law, and public policy. So, the Constitution, federal law, or public policy would have to require the "Federal awarding agency" to do something. This regulation does not apply to Clay County.

Second, Detainees cite 2 C.F.R. § 200.303(a). (Complaint ¶ 64.) That regulation provides that the "non-federal entity" must "establish and maintain effective internal control over the Federal award that provides reasonable assurance that the non–Federal entity is managing the

Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the Federal award." Other than requiring establishment of "internal control[s]," this regulation does not dictate that funds be spent in any particular manner.  Detainees do not allege that Clay County is unintentionally improperly spending funds due to lack of internal controls. Rather, Detainees allege Clay County is intentionally improperly spending money.

Third, Detainees cite 2 C.F.R. 200.400(g) (Policy Guide), which provides that the "non–Federal entity may not earn or keep any profit resulting from Federal financial assistance, unless explicitly authorized by the terms and conditions of the Federal award." This prohibits earning a profit unless authorized. This "Policy Guide" does not direct Clay County to spend money in any particular manner.

Fourth, Detainees cite 18 U.S.C. § 1103(a)(11)(A), (Complaint ¶ 67), which provides that the "Attorney General, in support of persons in administrative detention in non-Federal institutions, is authorized . . . to make payments from funds appropriated for the administration and enforcement of the laws relating to immigration, naturalization, and alien registration for necessary clothing, medical care, necessary guard hire, and the housing, care, and security of persons detained by the Service." This provides when the Attorney General may spend money. It does not apply to Clay County.

Fifth, Detainees cite 8 U.S.C. § 4013(a), (Complaint ¶ 67), which provides that the Attorney General can spend money on "necessary clothing," "medical care and necessary guard hire," and "housing" for prisoners. Once again, this permits the Attorney General to spend money. It does not apply to Clay County.

Finally, Detainees look to federal guidance. (Complaint ¶ 68.) Federal guidance provides that the "fixed per diem rate will be computed on the basis of actual, allowable, and allocable

23

direct and indirect costs associated with the operation of the facility and that benefit federal prisoners." (*Id.*) This dictates how a per diem is calculated. It does not restrict how Clay County can spend money.

None of the statutes, regulations, or guidance cited by Detainees dictate that Clay County spend money in any particular manner or create a private right of action. Many do not even apply to Clay County at all. As a result, Detainees fail to state a claim that Clay County's alleged acts violate any of these regulations, statutes, or guidance. *Delebreau v. Danforth*, 743 Fed.Appx. 43, 44 (7th Cir. 2018) (holding claim properly dismissed because "the statute does not apply").

## Conclusion

Clay County is the only necessary defendant as concerns the claim against the Clay County Defendants, and all other Clay County Defendants should be dismissed as duplicative or because they are not parties to the Agreement. In addition, Count III fails because Detainees lack standing to bring it because they are not parties to the Agreement and they are not third-party beneficiaries to Agreement under federal law or Indiana law. Moreover, Detainees failed to identify any basis under the law for their substantive claim. This Court should dismiss Count III. As that is the only claim asserted against the County, such an order would terminate Clay County Defendants involvement with this case.

Respectfully submitted,

*/s/ Andrew M. McNeil*
Stephen C. Unger (#25844-49)
Andrew McNeil (#19140-49)
Bradley M. Dick (#29647-49)
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000
Fax: (317) 684-5173
sunger@boselaw.com

24

amcneil@boselaw.com
bdick@boselaw.com

*Attorneys for the Clay County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2022, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*/s/Andrew M. McNeil*

4405031_2