# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| MARIBEL XIRUM, | ) |
| JAVIER JAIMES JAIMES, | ) |
| BAIJEBO TOE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 1:22-cv-00801-TWP-KMB |
| | ) |
| U.S. IMMIGRATION AND CUSTOMS | ) |
| ENFORCEMENT (ICE), | ) |
| U.S. DEPARTMENT OF HOMELAND | ) |
| SECURITY (DHS), | ) |
| ALEJANDRO MAYORKAS under the title of | ) |
| Secretary of DHS, | ) |
| TAE JOHNSON under the title of Acting Director | ) |
| of ICE, | ) |
| MONICA S. BURKE under the title of ICE Acting | ) |
| Assistant Director of Custody Management;, | ) |
| RICARDO A. WONG under the title of ICE | ) |
| Deputy Assistant Director, Oversight Compliance | ) |
| and Acquisition Division, | ) |
| TRAVIS GRAHAM under the title of ICE Officer, | ) |
| ANGELINA RAMOS under the title of ICE | ) |
| Officer, | ) |
| VIRGINIA SUTTER under the title of ICE | ) |
| Officer, | ) |
| CLAY COUNTY, INDIANA, | ) |
| CLAY COUNTY COUNCIL, | ) |
| CLAY COUNTY SHERIFF'S OFFICE, | ) |
| JENNIFER M. FLATER, | ) |
| CLAY COUNTY BOARD OF | ) |
| COMMISSIONERS, | ) |
| CLAY COUNTY JAIL, | ) |
| MIKE MELENDEZ, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

This matter is before the Court on Plaintiffs Maribel Xirum, Javier Jaimes, and Baijebo Toe's (together, "Plaintiffs") Renewed Motion for Class Certification (Filing No. 158) pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

This action challenges the U.S. Immigration and Customs Enforcement's ("ICE") certification of the Clay County Jail as compliant with the Performance-Based National Detention Standards ("PBNDS"). Plaintiffs initiated this putative class action against ICE, nine other federal government defendants (together with ICE, the "Federal Defendants"), and twenty-one defendants who work for or otherwise represent Clay County, Indiana (the "Clay County Defendants") (Federal Defendants and Clay County Defendants together are referred to as "Defendants"). Because the requirements for a class action have been met, the Court **grants** the class certification, but not as it relates to the request for injunctive relief against Federal Defendants, as explained below.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are noncitizens who were detained at the Clay County Jail in Brazil, Indiana (the "Jail") pursuant to an Intergovernmental Service Agreement between ICE and Clay County, Indiana ("Clay County") for different lengths of time in 2021 and 2022.

On April 25, 2022, Plaintiffs filed a class action complaint pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), and Indiana law, seeking to enjoin the housing of detainees at the Jail and to prevent ICE from paying additional federal detention funds to Clay County. Plaintiffs sued on their behalf and on behalf of "all persons who are currently or will be detained by ICE at the Jail" (the "Class") (Filing No. 129 ¶ 25).

On February 2, 2023, Plaintiffs filed a substitute motion for class certification (Filing No. 100). While the substitute motion was pending, the Court entered an Order Granting in Part and

Denying in Part the Defendants' Motions to Dismiss, granting Plaintiffs leave to file an amended complaint (Filing No. 116).

On May 19, 2023, Plaintiffs filed an Amended Complaint, which is now the operative complaint, and asserted new claims against the Defendants (Filing No. 129). The Court subsequently denied as moot the substituted motion for class certification and granted Plaintiffs leave to file a renewed motion for class certification as to all claims asserted in the Amended Complaint (Filing No. 146). Defendants filed motions to dismiss the Amended Complaint that have since been resolved. Addressing Federal Defendants' motion, the Court dismissed one count with prejudice, leaving the others in place (*see* Filing No. 199). The Clay County Defendants' motion to dismiss (*see* Filing No. 150) has been granted as to Count VI, but Count V, Plaintiffs' state law claim for violating Indiana Code § 36-2-13-5(a)(7), has survived (*see* Filing No. 205). In this Order, the Court rules on Plaintiffs' Renewed Motion for Class Certification (Filing No. 158).

## II.      LEGAL STANDARD

To certify a class, plaintiffs must first satisfy all four prerequisite requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 24(a)(1)–(4). Before evaluating the Rule 23 requirements, the court must first determine whether the class is identifiable, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006), meaning that its class membership can be readily determined by reference to objective criteria. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 496 (7th Cir. 2012). If successful in that regard, plaintiffs must overcome the final hurdle by showing that the circumstances of their case fit one of the three "types" of class actions which Rule 23(b) defines. Here, Plaintiffs move pursuant to Rule 23(b)(2).

Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  It does

not authorize class certification when each individual class member would be entitled to a different

injunction or declaratory judgment against the defendant.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

338 (2011).  Ultimately, if the relief sought is not uniformly applicable to the class, and the court

must undertake time-consuming inquiries into individual circumstances or characteristics, little is

gained from the case proceeding as a class action.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

155 (1982) (explaining that the purpose of class actions is to "save[ ] the resources of both the courts

and the parties").

A party seeking class certification bears the burden of demonstrating that certification is

appropriate by a preponderance of the evidence.  *Messner v. Northshore Univ. HealthSystem*, 669

F.3d 802, 811 (7th Cir. 2012).  The determination of whether to certify a proposed class is within the

broad discretion of the district court.  *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th

Cir. 1993).  While consideration of class certification is not "a dress rehearsal for trial on the merits,"

the court "must receive evidence and resolve the disputes before deciding whether to certify the

class."  *Messner*, 669 F.3d at 811 (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th

Cir. 2001)).

### III.   DISCUSSION

The Court begins by addressing a preliminary concern.  Since filing the original complaint

and motion to certify class on April 25, 2022, all three named Plaintiffs have since been transferred

or released from the Jail (*compare* Filing No. 102-13; Filing No. 102-14; *and* Filing No. 102-15,

*with* Filing No. 1; Filing No. 3).  This is not a problem considering Federal Rule of Civil Procedure

15(c)(1)(B), which provides for "relat[ion] back to the date of the original pleading" in circumstances

where the amended pleading asserts claims arising out of the same conduct, transaction, or

occurrence set out in the original pleading.  The Court is satisfied that the three named individuals constituted members of the proposed class in April 2022, when Plaintiffs were detained at the Jail. Accordingly, they may continue to represent a class of similarly situated persons despite no longer having a justiciable claim for individual relief themselves.  *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991); *see also Olson v. Brown*, 284 F.R.D. 398, 402 & n.3 (N.D. Ind. 2012) (plaintiff was transferred from county jail thirteen days after filing complaint, over three years from ruling on motion for certification) (noting remand of case by Seventh Circuit in *Olson v. Brown*, 594 F.3d 577 (7th Cir. 2010)); *Olson*, 594 F.3d at 579, 583–84 ("Olson filed for class certification at the same time he filed the complaint.") (reversing district court's dismissal based on plaintiff's subsequent transfer from county jail since case fit within the exception to the mootness doctrine carved out for inherently transitory cases).  Furthermore, each has attested as to the various duties of a class representative and that they are committed to fully participating in this case, including keeping in contact with counsel for the remainder of the case (*see* Filing No. 101-34; Filing No. 101-39; Filing No. 101-42).

**A.**     **8 U.S.C. § 1252(f) Prohibition**

The Court will next address Federal Defendants' position that class-wide injunctive relief as it concerns them is barred under the current statutory framework[1] (*see* Filing No. 167 at 23), a point that Plaintiffs do not address in their reply (*see* Filing No. 170).

8 U.S.C. § 1252(f)(1) prohibits lower courts from entering injunctions on behalf of an entire class of aliens that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions of 8 U.S.C. §§ 1221–32, which

---

[1] Although Federal Defendants moved to dismiss the original Complaint on these grounds (*see* Filing No. 61 at 15–16), they neglected to make the same argument in moving to dismiss the Amended Complaint (*compare* Filing No. 153). They reinvoke the argument, however, in responding to Plaintiffs' renewed motion to certify the class.

govern the inspection, apprehension, examination, and removal of aliens.  *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 549–51 (2022).

8 U.S.C. § 1226(a) authorizes the Attorney General to arrest and initially detain a noncitizen who has entered the United States and is believed to be removable.  *See Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022), *appeal dismissed sub nom. Perera v. Kaiser*, No. 22-15898, 2022 WL 17587149 (9th Cir. Sept. 21, 2022).  Pending a decision on whether the noncitizen is to be removed, such arrested noncitizens may continue to be detained.  *See* 8 U.S.C. § 1226(a)(1).  The parties do not dispute that § 1226, and not another provision of the Immigration and Nationality Act ("INA"), serves as the statutory authority under which ICE detains Plaintiffs and noncitizen putative class members at the Jail.[2]

Here, some but not all of the injunctive relief that Plaintiffs seek in their Amended Complaint, if granted, will require federal officials to take or refrain from taking actions to enforce or implement § 1226(a)(1).  Specifically, Prayer for Relief (F) requests, given an invalid explanation why ICE certified the Jail's overall performance evaluation, that the Court enjoin the agency from "using federal funds to pay for detention" and "continuing to detain Class members" at the Jail.  While the second of these items (continuing to detain) expressly seeks to enjoin § 1226(a)(1) enforcement at the Jail, the first of the pair (using federal funds to pay for said detention) still fits within the realm of "restrain[ing] the operation of" § 1226(a).  8 U.S.C. § 1252(f)(1).  *See Aleman Gonzalez*, 596 U.S. at 550 ("[T]he 'operation of' the relevant statutes is best understood to refer to the Government's efforts to enforce or implement them. . . . [T]he 'operation of the provisions' is a reference not just to the statute itself but to the way that [it is] being carried out." (internal quotations omitted, third

---

[2] Even if another provision of the INA served as the statutory authority for the noncitizen detention in question, say 8 U.S.C. § 1225(b)(1)(B)(ii) (mandatory detention for further consideration of asylum application), the Court is persuaded it would still reach the result discussed below under § 1252(f)(1).

alteration in original)).  On its face, Prayer for Relief (J) is no different in this regard as it seeks to "[e]njoin [ICE] from making any future payments" (Filing No. 129 ¶ J).

Section 1252(f) would equally bar the Court from issuing the specific injunctive relief expressed in prayers (L) and (M), which comparably request court orders that ICE exercise its monitoring authorities under, and enforce, "the UAR[3] *and INA.*"  *Id.* ¶¶ L, M (emphasis added).  Arguably, (L) and (M) might be interpreted to seek a limited injunction that commands ICE to only follow UAR requirements, thus sidestepping the § 1252(f) prohibition.  The Court, however, interprets the prayers in conjunction with the corresponding claim for relief, Count IV.  Rife with references to the INA, *see id.* ¶ 314 (citing 8 U.S.C. § 1103(a)(11)(A)), and "other relevant provisions of federal law" besides the UAR, *id.* ¶ 318, Count IV plainly argues that if ICE were required to properly exercise its responsibilities under federal law, then the "deplorable conditions at the Jail" "could be ameliorated."  *Id.* ¶ 323.  Translated: were the Court to direct ICE to not "eschew[] all [] monitoring and enforcement options," *id.* ¶ 317 (emphasis omitted)—that is, desist from implementing the INA at the Jail *in the manner in which it has*— it would prevent continuing and future irreparable harm.  In effect, (L) and (M) veiledly drive at the same injunction as (F) but, like (J), do so in a one-step removed fashion by referencing supposedly-unmet statutory and regulatory duties.  *Contra id.* ¶ J (enjoining ICE from making future payments "without complying with . . . federal statutory and regulatory duties . . . and ensuring that the payments are directed for the care and custody of Plaintiffs and other Class members").

At this stage, without the benefit of the parties' briefing on this issue, the Court need not and will not extend its decision beyond following the dictates of § 1252(f).  More specifically, the Court abstains from deciding the precise remedies that remain available to the putative class.  *See*

---

[3] Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards ("UAR") (*see* Filing No. 129 at 17 ¶ 64).

*Immigrant Defs. Law Ctr. v. Mayorkas*, No. CV 20-9893, 2023 WL 3149243, at *15 (C.D. Cal. Mar. 15, 2023).  Plaintiffs' surviving claims against Federal Defendants seek additional, non-injunctive relief, which may still be appropriate with respect to the class.  *See Aleman Gonzalez*, 596 U.S. at 571–72 (Sotomayor, J., concurring in judgment in part and dissenting in part) (explaining that the Court's decision "rightly does not embrace the Government's eleventh-hour suggestion at oral argument to hold that section 1252(f)(1) bars even class-wide declaratory relief, a suggestion that would (if accepted) leave many noncitizens with no practical remedy whatsoever against clear violations by the Executive Branch"); *Biden v. Texas*, 597 U.S. 785, 839 (2022) (Barrett, J., joined by Thomas, Alito, & Gorsuch, JJ., dissenting) ("[The Court] avoids a position on whether § 1252(f)(1) prevents a lower court from vacating or setting aside an agency action under the Administrative Procedure Act.").

Moreover, the Court acknowledges that § 1252(f) would still allow the named plaintiffs to individually seek the relief it bars on a class-wide basis.  *See Aleman Gonzalez*, 596 U.S. at 550 (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–482 (1999)).

Accordingly, the Court **strikes** the above requested class-wide injunctions (Prayers for Relief (F), (J), (L), and (M)), but **only regarding the class**, thereby allowing the named plaintiffs to pursue such relief if the Court were to ever decertify the class.  The Court now proceeds to analyze whether certification should be granted.

**B.**     **Rule 23(a) Requirements**

**1.**     **Numerosity**

Rule 23(a) first requires that the purported class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "While 'impracticable' does not mean 'impossible,' a class representative must show that it is extremely difficult or inconvenient to join all the members of the class."  *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021) (quoting 7A

Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1762 (3d ed.)).  When determining if joinder of all class members is impracticable, courts often consider many factors, including among others: the class size; judicial economy arising from the avoidance of a multiplicity of actions; the ease of identification of members of the proposed class; the geographic dispersion of class members; the ability of claimants to institute individual suits; requests for prospective injunctive relief which would involve future class members; and any other factors relevant to the practicability of joining all the class members.  *See* Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 3:6 (2002 & Supp. 2011).

Plaintiffs quote the Jail's daily population statistics to argue that thousands of people have cycled through the Class and, on any given day, often forty or more noncitizens are present at the facility (*see* Filing No. 159 at 26–27 (citing Filing No. 101-7; Filing No. 105-4; Filing No. 105-5; Filing No. 105-6; Filing No. 105-7)).  Plaintiffs reach beyond mere class size to argue more fundamentally that the putative Class's constantly changing composition and shifting nature makes individual joinder impractical.  *See id.* (citing among others *Olson*, 284 F.R.D. at 408).  Defendants do not contest the numerosity requirement or otherwise dispute Plaintiffs' estimations of the number of individuals encompassed by the proposed Class or their allegations that individual joinder is impracticable (*see* Filing No. 166 at 11 n.1; Filing No. 167).

Plaintiffs' argument about the inherently transitory nature of detained noncitizens is well taken.  *See Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 44–45 (D.D.C. 2018).  Joinder in a single, non-class suit is impossible, because only a portion of the Class at any one time will have standing to bring their claims.  *See Copeland v. Wabash Cnty.*, No. 20-cv-154, 2020 WL 5566114, at *5–6 (N.D. Ind. Sept. 16, 2020).  Similarly, since the Class includes future membership, there is no way to know the identity of those future Class members, which makes joinder inherently

impracticable. *See Hizer v. Pulaski Cnty.*, No. 16-cv-885, 2017 WL 3977004, at *6 (N.D. Ind. Sept. 11, 2017) (quoting *Olson*, 284 F.R.D. at 408). The Court therefore finds that Plaintiffs' proposed Class satisfies the Rule 23(a)(1) numerosity requirement.

### 2.   <u>Commonality And Typicality</u>

Federal Defendants contend the commonality and typicality requirements have not been met because, among other things, Plaintiffs do not allege any common "injury" among the Class members or "practice" of the Defendants and instead allege an across-the-board challenge to the Jail's general detention practices (*see* Filing No. 167 at 14; *see also id.* at 14–15 (discussing *Falcon*, 457 U.S. 147)). They "stitch together a disparate array of detention conditions and practices at the Jail to tie together a single class," which they cannot do. *Id.* at 15. Federal Defendants further argue Plaintiffs fail to sufficiently demonstrate that, as a factual matter, their claims are widespread among the Class. *See id.* at 18–20. They maintain that the experiences of a small number of detainees are idiosyncratic when compared with the Class, which is of a greater size and asserts a wider array of grievances.

Only addressing the typicality requirement, Clay County Defendants argue that Plaintiffs do not make any showing that their experiences in 2021 or 2022 will be typical of future detainees' experiences after a planned renovation of the Jail is complete (*see* Filing No. 166 at 13).

To satisfy the commonality requirement, the claims of the proposed class members "must depend upon a common contention that is capable of class-wide resolution." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015). A "common nucleus of operative fact" generally fulfills this requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). This common nucleus is typically found "where the defendant has engaged in some standardized conduct toward the proposed class members." *Mejdreck v. Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141, at *3 (N.D. Ill. Aug. 12, 2002), *aff'd sub nom. Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910 (7th Cir. 2003).

Typicality is satisfied if the named representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Rosario*, 963 F.2d at 1018. "[T]here must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

### a. **Commonality**

Plaintiffs' Amended Complaint proposes several questions of law or fact common to the Class (Filing No. 129 ¶ 257), which they rephrase in the motion for class certification in relevant part as:

- Whether the conditions at the Jail in December 2021 should have resulted in a "Does Not Meet Standards" rating, which would have required ICE to immediately cease use of the Jail because of two consecutive failed overall performance evaluations[;]

- Whether the Federal Defendants' reliance on flawed inspection practices to evaluate the Jail violated the APA[;]

- Whether the Federal Defendants' certification of the Jail as compliant with the PBNDS in December 2021 violated the APA[;]

 . . . .

- Whether the Federal Defendants' decision to continue making payments to ensure ICE's continued access to the Jail, despite the County's misuse of the funds to pay for County expenses unrelated to the care of people detained by ICE at the Jail, violated the APA[;]

- Whether the Federal Defendants violated the APA by abdicating their responsibility to enforce the UAR with respect to ICE payments to the County for the care and custody of noncitizens at the Jail[;]

- Whether the Clay County Defendants violated their duty to adequately "maintain" the Jail and "take care" of detainees at the Jail[; and]

- Whether expenses and expenditures Clay County has paid for using ICE payments violated federal law, which require that funds paid to Clay County be used exclusively for the care and custody of detained noncitizens.

(Filing No. 159 at 28).

In response, Federal Defendants argue Plaintiffs do not identify any Jail policy—for example, a policy regarding the quantity of food to be served to detainees—that establishes a common basis for their contentions (Filing No. 167 at 16).  At best, then, Plaintiffs demonstrate that "two of the class representatives experienced various allegedly substandard conditions at the Jail, not all common between them, and that a handful of other detainees experienced some other substandard conditions."  *Id.* at 17.

In finding commonality, the Court need find only a single common question of law or fact, but it needs to identify more than the fact that everyone suffered as a result of a violation of the same provision of law.  *See Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020) (citing *Wal-Mart*, 564 U.S. at 350, 359).  Plaintiffs' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350.  The key to commonality is "not the raising of common 'questions' . . . but, rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id.* (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009)).

In their reply in support of class certification, Plaintiffs argue that Federal Defendants' commonality argument mischaracterizes their claims, which are "not based on the harm to Class members from the substandard conditions per se," but on the asserted actions by the Federal Defendants that violated the APA (Filing No. 170 at 3).  The substandard conditions prove that such actions violated the APA.  Plaintiffs further clarify:

> it is those violations that caused the same injury to all Class members: they are or
> will be detained at the Jail notwithstanding laws, regulations, and standards that
> would have required ICE (1) to terminate its relationship with the Jail due to the
> grossly inadequate care and misuse of funds; or (2) at a minimum, to ensure that
> Clay County used ICE payments for the care and custody of class members at the
> Jail in accordance with federal law.

*Id.* at 4 (citing *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 800 (7th Cir. 2017)).

In this case, as in all class actions, commonality cannot be determined without a precise understanding of the nature of the underlying claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (citation omitted)).

To this end, the Court emphasizes that Plaintiffs' case does *not involve* claims of constitutional violations; rather, they seek relief against ICE under the Administrative Procedure Act, 5 U.S.C. § 706(2)[4] (*see* Filing No. 129 ¶¶ 261–324). In Count I, Plaintiffs challenge the overall performance evaluation of the Jail and ask the Court to vacate "ICE's certification that the Jail complied with the PBNDS [Performance-Based National Detention Standards] based on the December 2021 overall performance evaluation"; to remand to the agency "to provide a valid explanation of the agency's action at the time"; and to retain jurisdiction pending the agency's explanation. *Id.* ¶¶ D, E. If the explanation is invalid, Plaintiffs seek a further declaration that both the certification itself, as well as the use of Nakamoto in conducting the 2021 inspections, was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law in violation of the APA. *See id.* ¶ F; *see also* 5 U.S.C. § 706(2)(A) (indicating the reviewing court shall hold unlawful and set

---

[4] Since the Court identifies one common question of law or fact common to all class members in Count I, the Court does not need to and will not address commonality with respect to the state claims brought against Clay County Defendants under the Indiana Declaratory Judgment Act and Indiana Trial Rule 57, which Clay County Defendants do not challenge. *See supra*.

aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

The Court need not look to any of the additional counts brought against the Federal Defendants to find Plaintiffs satisfy the commonality requirement.  First, Plaintiffs and the Class members assert the same legal claim in Count I: whether ICE's certification of the Jail in December 2021 as PBNDS-compliant violated the APA.  The determination of the truth or falsity of this contention will resolve the central issue to the validity of each member's claim as to Count I "in one stroke." *Wal-Mart*, 564 U.S. at 350.  Second, the facts underlying the Class's claim, while likely voluminous and possibly complex, are the same as to the inspections and evaluations.  Third, the legal injuries in all instances are the same.  The Plaintiffs did not receive the benefit that would have accrued to them had the Jail complied with PBNDS standards and/or the agency selected to not certify when faced with noncompliance.  Put differently, had the agency required proper inspections and/or meaningfully evaluated the Jail, ICE would have terminated its relationship with the facility. Plaintiffs would then have received the benefit such agency action ultimately produced: transfer to a properly-inspected and meaningfully-evaluated facility *that presumably was indeed PBNDS-compliant*.  Fourth, members of the Class and Plaintiffs all challenge the same ICE practice or policy that maintains the relationship between the agency and the Jail despite the latter's noncompliance. Fifth, the same relief is sought.

In reaching these conclusions, the Court agrees with Plaintiffs' arguments in several respects. The  "array" of alleged violations of different PBNDS components is only evidence demonstrating Plaintiffs' operative theory that the Jail should have failed its second consecutive overall performance evaluation.  The class certification discovery, including the December 2021 Nakamoto inspection report (Filing No. 101-21), shows that the problems identified in the provision of housing at the

Jail—*e.g.*, inadequate sanitation levels, crowded bedding, and malfunctioning of toilets—are not merely isolated instances but, rather, examples of systemic deficiencies that expose male and female detainees alike to significant "Areas of Concern" and other persisting, unacceptable conditions. *Compare id.* at 4, *with* Filing No. 101-31 (deposition of Xirum), *and* Filing No. 101-32 (deposition of Jaimes).  Considering such conditions, together and alongside those described in the preceding May 2021 inspection (*see* Filing No. 101-17), suggests that the underlying root cause of the conditions is a systemic failure by responsible parties in (1) complying with the PBNDS and other applicable standards generally, but also (2) relying on flawed inspection practices in furtherance of evaluating the Jail's performance.

Notwithstanding that noncompliant conditions exist, are noted in the Nakamoto reports, and persist across successive inspections, the Jail passes performance evaluations and houses detainees. Plaintiffs argue the compliance issues do not deter the relationship between the agency and the Jail. In so arguing, Plaintiffs seek to prove on a classwide basis that Defendants' practice and policy of furthering a valuable relationship despite noncompliance is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law (*see* Filing No. 129 ¶ 275 ("Given [Defendants'] ulterior motives, it was arbitrary and capricious to assign the Jail a passing grade without a thorough inspection of the actual conditions at the Jail.")).

In sum, the Plaintiffs have met the Rule 23(a)(2) requirement at this stage.  The materials submitted in support of the initial motion to certify the Class (*see* Filing No. 101-1 *et seq.*; Filing No. 102-1 *et seq.*) constituted more than sufficient evidence at this stage in the litigation of the existence of a policy and practice that subjects all members of the putative Class to legal injury.  The lengthy Amended Complaint further defines thoroughly the contours of neglect in the underlying Jail evaluations, and details with sufficient precision and specificity particular conduct by the

defendant parties.  *Contra M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 844 (5th Cir. 2012) (noting that commonality is not shown when plaintiffs allege an amorphous claim of undefined and unspecified systemic misconduct).  Accordingly, the Court finds that Plaintiffs have satisfied the Rule 23(a)(2) commonality requirement.

### b. **Typicality**

Rule 23(a)'s typicality requirement is closely related to the commonality requirement, *Rosario*, 963 F.2d at 1018, with which it will often overlap.  *Copeland*, 2020 WL 5566114, at *8.  Indeed, Federal Defendants rely on the same arguments to defeat both requirements.  But just like the commonality inquiry, the typicality requirement is met here.

Typicality is important because the class representative, in pursuing his or her own claims, is also advancing the interests of the class.  *Gentry v. Floyd Cnty.*, 313 F.R.D. 72, 79–80 (S.D. Ind. 2016) (citing *In re Gen. Motors Corp. Dex–Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 312 (7th Cir. 2007)).  Generally, a class representative's "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory."  *McFields v. Dart*, 982 F.3d 511, 517–18 (7th Cir. 2020) (quoting *Oshana*, 472 F.3d at 514) (internal quotation marks omitted).  The requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large," but "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members."  *Id.* (quoting *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009)).  That is, similar legal theories may control despite factual distinctions.  *Anderson v. Cornejo*, 199 F.R.D. 228, 239 (N.D. Ill. 2000) (citing *Rosario*, 963 F.2d at 1018).

Plaintiffs' deposition testimony identified experiences shared by members of the putative Class.  (*Compare* Filing No. 105-11; Filing No. 105-12; *and* Filing No. 101-21 at 4, *with* Filing No.

101-32 at 4, 8).  While each Class member—named Plaintiffs included—to some degree presents unique circumstances, the Court finds that these differences do not matter in a manner that counts. The differing situations are not overwhelming factual distinctions that defeat the "essential characteristics" across the claims, *Muro*, 580 F.3d at 492 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)), but make up the mere "factual distinctions" that arise in most any case involving a transient prison population held in a large facility.  Plaintiffs undisputedly challenge the same practices of Defendants and accompanying policies and standards that govern all noncitizen detainees while at the Jail, and they will rely on the same legal theories to prove their claims.  *See Flood v. Dominguez*, 270 F.R.D. 413, 418 (N.D. Ind. 2010), *reconsideration denied*, No. 08 CV 153, 2011 WL 238265.  This controls despite any factual distinctions that may arise.  *See De La Fuente*, 713 F.2d at 232–33.  Plaintiffs have thus met their burden.

Clay County Defendants' offered reason why Plaintiffs' claims are atypical of the other Class members—the new housing unit for the Jail renovation, set to have opened in the Spring of this year, will have more than doubled the Jail's size (*see* Filing No. 166 at 13 (citing Filing No. 166-1 ¶ 9 (Swearingen Aff.)))—does not defeat typicality.  Even if the purpose of the renovation was to "reduce the number of people detained in the existing portion of the Jail and to eliminate the use of boat beds" and the new housing unit has "new toilets, sinks, plumbing, beds, walls, ceilings, tables, chairs, etc." (Filing No. 166-1 ¶¶ 15, 16), it remains fundamentally unclear how the purportedly-finished renovations alleviate or remedy all of the noncompliant conditions of which Plaintiffs complain.  Only $2,000,000.00 of the total cost of $27,000,000.00 for the entire renovation was spent on upgrades to the existing Jail, with the remainder presumably being spent on the new unit.  *See id.* ¶ 18.  And it is only "likely" that the Jail will house putative Class members in the new unit.  *Id.* ¶ 14. In short, the partial redress of symptoms through an expansion and renovation does not address or

remedy the wrongful conduct alleged in Plaintiffs' claims, nor the underlying root cause of the complained-of conditions, *see supra* Section III.B.2.a. ("Commonality"), regardless of whether it alleviates some resulting symptoms.

Because the Class representatives' claims "have the same essential characteristics as the claims of the class at large," *Retired Chi. Police Ass'n*, 7 F.3d at 597 (cleaned up), their claims are sufficiently typical, and the Court finds that Plaintiffs have satisfied the Rule 23(a)(3) typicality requirement.

### 3. Adequacy of Representation

Rule 23(a)(4) requires a plaintiff to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement aims to ensure that absent class members will not be bound by the outcome of a suit in which they were not competently and fairly represented. *J.D. v. Azar*, 925 F.3d 1291, 1312 (D.C. Cir. 2019) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). The adequacy inquiry is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Retired Chi. Police Ass'n*, 7 F.3d at 598 (citation and quotation marks omitted). A class is not fairly and adequately represented if class members have antagonistic or conflicting claims. *Rosario*, 963 F.2d at 1018. Defendants advance arguments under each of the adequacy inquiry prongs.

#### a. Interests of Class Members

Federal Defendants argue the interests of the Class diverge since Plaintiffs "seek, inter alia, the end of ICE detention at the Jail," but "members of this class may wish to remain at the Jail and not prefer to be moved elsewhere in the United States during their period of immigration detention" (Filing No. 167 at 22). Likewise, Clay County Defendants similarly argue that Plaintiffs are placing

other detainees "in a precarious situation" by "seeking to reduce available ICE detention facilities" and threatening a "chaotic transfer of all ICE detainees held at the Jail" (Filing No. 166 at 23).

Without more, the Court does not reach Defendants' conclusion that distinct or divergent interests exist within the Class. Defendants' narrowly focused hypotheticals are supported only with argument. The Court agrees *arguendo* that "[c]lass members may have significant ties to the area near the Jail" (Filing No. 167 at 23); given the sheer number of detainees transferring in and out of the Jail, such a claim is likely a statistical probability. However, Federal Defendants do not provide evidence that those same Class members "may not wish to be moved." *Id.* This missing link is fatal to Federal Defendants' argument in the Court's eyes. Were such contentions accompanied by the identity or statements of noncitizens seeking to remain at the Jail despite its inadequate conditions, they would go much further.

Moreover, Clay County Defendants' argument is misplaced. It conflates the eventual governmental response to the relief ultimately issued by this Court (ending the contractual relationship) with the ability to represent the Class in pursuit of relief in the first place. In Plaintiffs' own words, they "seek compliance with the law, no more, no less." (Filing No. 170 at 15; *see id.* at 14 (explaining Plaintiffs do not seek closure of the Jail to ICE, but rather compliance with legal obligations)). The impending "chaotic" transfer to which they allude is also unsupported by evidence, overstated, and perhaps undermined by the ICE detainee transfer policy (*see* Filing No. 102-9 at 5 (contemplating discretionary transfers resulting from facility use termination due to the failure to meet detention standards)).

Plaintiffs point out in their reply that Defendants' "hypothesized 'choice' is one that noncitizens do not actually get to make" (Filing No. 170 at 10). This point is also well taken in light of the fact that transfers are discretionary. According to a submitted ICE/DRO Detention Standard,

19

the determining factor in deciding whether to transfer a detainee is whether the transfer is required for operational needs.[5]

In total, Plaintiffs do not have a conflict with the proposed Class.  They have the same alleged injuries as Class members, and they seek the same ultimate relief.  Namely, they seek a declaratory order related to the prior certification of the Jail and the process used in doing so; knowingly making payments for purposes other than providing custody and care of Class members; enforcement of violations of the INA and UAR with respect to those payments; the failure to maintain adequate conditions at the Jail and "take care" of Class members; and the misallocation of payments for unrelated County expenses.  It is beyond argument that all Class members benefit when the mechanisms that ensure adequate conditions at the Jail are adhered to and enforced correctly.

### b.  Adequacy of Plaintiffs' Counsel

Clay County Defendants complain that one set of Plaintiffs' chosen counsel, attorneys from the National Immigrant Justice Center ("NIJC"), "advanc[e] a political objective to end detention without regard for the impact on the current and future detainees."  (Filing No. 166 at 20).  Arguing that the Court can consider the motivation behind counsel's actions, Clay County Defendants point to NIJC's stated goal to "Dismantle the U.S. Immigration Detention System" and contends that the organization is trying to use the Court to accomplish political objectives.  *Id.* (citing *Roadmap to Dismantle the U.S. Immigration Detention System*, NIJC (July 28, 2021), *available at* https://immigrantjustice.org/research-items/white-paper-roadmap-dismantle-us-immigration-detention-system (last visited Sept. 30, 2024)).

---

[5] A different policy document indicates a field officer director may deem a transfer necessary for a number of reasons, including: to relieve or prevent facility overcrowding; at ICE's discretion for its convenience when the venue of the Executive Office for Immigration Review proceedings differs from the venue at which the alien is held; or, as mentioned previously, from facility use termination.

The Court is not convinced.  As Plaintiffs point out, organizations that advocate on behalf of particular groups or for particular causes, including the NIJC, are routinely appointed as class counsel, especially in cases seeking injunctive or declaratory relief under Rule 23(b)(2).  *See, e.g.*, *Copeland v. Wabash Cnty.*, 338 F.R.D. 595, 605 (N.D. Ind. 2021) (ACLU of Indiana); *Ely v. Saul*, 572 F. Supp. 3d 751, 776 (D. Ariz. 2020) (Lambda Legal); *O.A. v. Trump*, 404 F. Supp. 3d 109, 157 (D.D.C. 2019) (NIJC).  The Court is unaware of any authority preventing an organization that expresses policy views from serving as class counsel.

Clay County Defendants attempt to liken the NIJC's motivations to that in *Crissen v. Gupta*, a case in which this Court found that plaintiff counsel's goal of negatively affecting defendants' business was "directly at odds" with the goal of the putative class members.  No. 12-CV-00355, 2014 WL 4129586, at *6 (S.D. Ind. Aug. 19, 2014); *see* Filing No. 166 at 21, 22–23 (quoting and citing *Crissen*).  There is no evidence of such a conflict of interest in this case.  Here, no allegations of misconduct exist, let alone allegations like in *Crissen* "that create[d] a serious doubt that counsel will represent the class loyally."  *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011) (finding proposed class counsel was inadequate because of a "demonstrated lack of integrity").

The Court is also unpersuaded that NIJC will not adequately represent the Class because they chose not to advance a constitutional claim under 42 U.S.C. § 1983.  "[C]lass counsel is not inadequate simply because they have not asserted every claim that could theoretically be pled against a defendant."  *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 305 (3d Cir. 2010), *as amended* (Oct. 20, 2010) ("[M]ere disagreement over litigation strategy [] does not, in and of itself, establish inadequacy of representation.") (citation omitted).

Rather, the Court remains convinced based on the nearly two-and-one-half years of proceedings so far that Plaintiffs' counsel will vigorously prosecute the action they have brought. Plaintiffs are represented by experienced attorneys with substantial experience in civil rights and federal class action litigation (*see* Filing No. 101-40; Filing No. 159-2).

In light of the above analysis, the Court is confident that Plaintiffs and their counsel "will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), and the Court finds that the counsel should be appointed to represent the Class pursuant to Federal Rule of Civil Procedure 23(g).

**C.    Rule 23(b)(2) Requirements**

Where, as here, a proposed class satisfies all the prerequisites of Rule 23(a), class certification is appropriate if the class qualifies as one of the types listed under Rule 23(b).  As mentioned previously, Rule 23(b)(2) permits certification when a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

First, Clay County Defendants argue Plaintiffs do not meet their Rule 23(b)(2) burden because they fail to demonstrate a likelihood of future harm.  From Clay County Defendants' perspective, Plaintiffs "make[] no effort to demonstrate that the harm Detainees allegedly faced in 2021 and 2022 will continue into the future," or at least beyond the completion of the Jail renovation, which includes an entirely new housing unit and renovated existing Jail (Filing No. 166 at 12).

As discussed above, it remains unclear to the Court how, if at all, the facility improvements championed by Clay County Defendants remedy the bevy of noncompliant conditions at the Jail. More importantly, the improvements themselves do not correct the alleged (and future) misallocation of payments, which is also conduct complained of here.  There remains a non-negligible probability

that Clay County Defendants will continue to allocate ICE payments for unrelated and discretionary expenses and thereby violate state law and federal law requirements.  The Amended Complaint spells out this risk in detail (*see* Filing No. 129 ¶¶ 93–100 (quoting WAMB The Breeze, Clay County, IN County Council Meeting 12-6-21, at 56:45 (Dec. 6, 2021), https://tinyurl.com/yc7bxty9; I. Jacobs, *Commissioners Refute Public Claims, Misleading Use of Facts on Jail Expansion*, The Brazil Times (Dec. 17, 2021), https://tinyurl.com/3eejchay)).  To this effect, the injunctive and declaratory relief sought, if granted, would provide relief to the entire Class.

Second, Clay County Defendants argue at length that the relief Plaintiffs seek is unavailable, too vague, and, regarding the injunctive relief, has not been described in reasonably particular detail such that it could satisfy the requirements of Rules 23(b)(2) and 65(d) (*see* Filing No. 166 at 13–24).

Disagreements with the merits of Plaintiffs' claims are not a proper basis for denying certification.  The Court recognizes that a rigorous analysis of the Rule 23 requirements will often "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. "Yet, the court may only consider the merits of a claim to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 341 (7th Cir. 2023) (quoting *Amgen Inc.*, 568 U.S. at 466).  Clay County Defendants' arguments about the viability of Counts V and VI and availability of the relief therein do not pertain to "select[ing] the method best suited to adjudication of the controversy," *Amgen Inc.*, 568 U.S. at 460, and have been considered as part of the Court's ruling on the motion to dismiss the Amended Complaint and not as part of the motion for class certification.  *See id.*

Clay County Defendants point to decisions from the Fifth and Eleventh Circuits, each noting that the unavailability of *injunctive* relief under a statute would preclude certification of a Rule 23(b)(2) class.  *See Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008) ("Because

injunctive relief is not a remedy available under [the Truth in Lending Act] to . . . the plaintiff class, Rule 23(b)(2) certification under TILA was improper."); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 n. 39 (5th Cir. 2000) ("[T]he unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion."). While instructive, these decisions are not binding upon this Court. Also, the Court notes that the pair explicitly address the unavailability of injunctive relief by itself but remain vague concerning the counterfactual situation where injunctive relief is statutorily precluded, but declaratory or other relief, like vacating an agency action under the APA, *remains available*.

Clay County Defendants' arguments concerning vagueness are also unpersuasive. At this stage, Plaintiffs do not need to specify the precise injunctive relief they will ultimately seek. *See B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019). As the Ninth Circuit has indicated, Rule 23(b)(2)

> ordinarily will be satisfied when plaintiffs have described the general contours of an injunction that would provide relief to the whole class, that is more specific than a bare injunction to follow the law, and that can be given greater substance and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony.

*Id.* (quoting *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014), *reh'g en banc denied*, 784 F.3d 571 (9th Cir. 2015)).

That is exactly what Plaintiffs have done: the "general contours of an injunction" that would provide relief to the entire Class are ordering Clay County Defendants to maintain appropriate conditions at the Jail (Count V). To the extent that Clay County Defendants argue that Prayer for Relief (P) is a "request to follow the law" (Filing No. 166 at 17), the Court sees Plaintiffs' proposed injunction similar to that found in *Chicago Teachers Union, Local No. 1*, where the prospective injunctive relief in question included only a moratorium on the alleged illegal behavior and "the appointment of a monitor to evaluate and oversee any new . . . process." 797 F.3d at 441. Moreover,

the ICE Handbook, with its administrable and concrete standards, will serve as a guide to later give

substance and specificity at an appropriate stage once testimony is heard and the merits decided.  *See*

*Snyder*, 922 F.3d at 972.  In sum, the Court finds that Plaintiffs have satisfied their Rule 23(b)(2)

requirement.

## IV.   <u>CONCLUSION</u>

For the reasons discussed above, Plaintiffs' Renewed Motion for Class Certification ([Filing

No. 158](#)) is **GRANTED**.  Accordingly, a class consisting of "all persons who are currently or will

be detained by ICE at the Jail" is **CERTIFIED** as a Class pursuant to Rule 23(b)(2) of the Federal

Rules of Civil Procedure and consistent with this Order.

**SO ORDERED**.

Date:  9/30/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Jacob Antrim
Bose McKinney & Evans LLP
jantrim@boselaw.com

Gina R. Bohannon
Sidley Austin LLP
gbohannon@sidley.com

Yoseph T Desta
DOJ-Civ
yoseph.t.desta@usdoj.gov

Bradley M. Dick
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
bdick@boselaw.com

Mark Feldman
National Immigrant Justice Center
mfeldman@immigrantjustice.org

Mark Fleming
mfleming@immigrantjustice.org

Mary Georgevich
National Immigrant Justice Center
mgeorgevich@immigrantjustice.org

Taisa M. Goodnature
DOJ-Civ
taisa.m.goodnature@usdoj.gov

Robert N. Hochman
SIDLEY AUSTIN LLP
rhochman@sidley.com

Benjamin N. Kelton
Sidley Austin LLP
bkelton@sidley.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
amcneil@boselaw.com

John Skakun, III
Sidley Austin LLP
jskakun@sidley.com

Ross McNeill Slaughter
DOJ-Civ
ross.m.slaughter@usdoj.gov

Stephen C. Unger
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
sunger@boselaw.com

Jennifer Martin Wheeler
Sidley Austin LLP
jwheeler@sidley.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov

Keren Hart Zwick
National Immigrant Justice Center
kzwick@immigrantjustice.org