UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARIBEL XIRUM, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:22-cv-00801-TWP-KMB |
| ) | |
| U.S. IMMIGRATION AND CUSTOMS ) | |
| ENFORCEMENT (ICE), et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER ON PLAINTIFFS' MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD ON COUNTS III AND IV

Presently pending before the Court is the Plaintiffs' Motion to Compel Completion of the Administrative Record on Counts III and IV of the Amended Complaint. [Dkt. 251.] For the reasons explained below, this motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

U.S. Immigration and Customs Enforcement ("ICE") oversees a large network of facilities that house non-citizen detainees. [Dkt. 129 at ¶ 192.] A few of these facilities are owned and operated by ICE, but most are owned and operated by outside partners, such as state or local governments. [*Id.*] These outside partners receive federal awards that reimburse them for the actual cost of housing non-citizen detainees in their facilities. [*Id.* at ¶¶ 64-68.] The Plaintiffs allege that these federal awards are subject to the Department of Homeland Security's Uniform Administrative Requirements, Cost Principles, and Uniform Audit Requirements for Federal Awards, 2 C.F.R. Part 200 ("UAR"). [*Id.*] They further allege that the UAR, in conjunction with the Immigration and Nationality Act, 8 U.S.C. § 1103(a)(11)(A), prohibits ICE's outside partners from using these federal awards for purposes that are unrelated to the actual cost of housing or

1

caring for non-citizen detainees.  [*Id.*]  Finally, they allege that the UAR also requires ICE to conduct audits to ensure that its outside partners are using the federal awards in accordance with federal law and to ensure that its outside partners take timely and appropriate corrective action if necessary.  [*Id.*]

Clay County, Indiana ("Clay County") receives federal awards for housing non-citizen detainees at the Clay County Jail (the "Jail").  [*Id.* at ¶¶ 3-4.]  In Count III of the Amended Complaint, the Plaintiffs challenge ICE's decision to continue making payments to Clay County despite knowing that Clay County uses these payments on general expenses that are unrelated to the actual cost of housing non-citizen detainees.[1]  [*Id.* at ¶¶ 5-6, 294-311.]  In Count IV of the Amended Complaint, the Plaintiffs allege that ICE has completely abdicated its duty of ensuring that Clay County uses the federal awards to house and care for non-citizen detainees and has failed to ensure that Clay County takes timely and appropriate corrective action, which has resulted in unacceptable conditions for non-citizen detainees at the Jail.  [*Id.* at ¶¶ 312-24.]  Underlying both of these claims is an allegation that "ICE has expressly taken the position that [the UAR] does not apply to detention agreements like [its agreement with Clay County], and has abdicated all enforcement of the UAR's requirements against [Clay] County."  [*Id.* at ¶ 191.]  The Defendants admit a portion of this allegation in their Answer to the Amended Complaint.  [Dkt. 204 at ¶ 191 ("Federal Defendants admit that ICE has taken the position that the UAR does not apply to agreements like the one in question in this case").]

---

[1] The named Plaintiffs are non-citizens who were detained at the Jail when this lawsuit was filed in April 2022.  [Dkt. 206.]  They represent a class consisting of "all persons who are currently or will be detained by ICE at the Jail."  [*Id.* at 25.]  Previous Orders refer to ICE, the Department of Homeland Security, and the federal officials named in this lawsuit collectively as the "Federal Defendants."  But because the Federal Defendants are now the only remaining defendants in this lawsuit, this Order simply refers to them as the "Defendants."  [*See* dkt. 229 (Amended Order relinquishing supplemental jurisdiction over claims against Clay County Defendants).]

Some of Plaintiffs' allegations in this lawsuit cite general findings that were made in a February 21, 2018, report by the Department of Homeland Security Office of the Inspector General titled "Immigration and Customs Enforcement did not Follow Federal Procurement Guidelines when Contracting for Detention Services" (the "Inspector General's Report"). *See* DHS Off. of Inspector Gen., *Immigration and Customs Enforcement Did Not Follow Federal Procurement Guidelines when Contracting for Detention Services*, OIG-18-53 at 10-14 (Feb. 21, 2018) ("*2018 OIG Report*"). The Inspector General's Report is publicly available on the Department of Homeland Security's website. *See* https://www.oig.dhs.gov/sites/default/files/assets/2018-02/OIG-18-53-Feb18.pdf (last visited September 19, 2025). Included in the Inspector General's report is the Homan Memorandum, which ICE's Acting Director wrote in response to an earlier draft of the Inspector General's Report. [Dkt. 199 at 20.] The Homan Memorandum states that ICE's Intergovernmental Services Agreement ("IGSA") authority stems from 8 U.S.C. § 1103(a)(11)(A) and that its IGSAs "are not generally required to follow the Federal Acquisition Regulation (FAR)." [*Id.*] The Homan Memorandum further states:

> Despite the [the Inspector General's] conclusion ICE has never defined IGSAs nor followed the FAR and or federal contracting guidelines contained in part 200 of Title 2 of the Code of Federal Regulations, both ICE [Office of Acquisition Management] and the Office of the Principal Legal Advisor (OPLA) have long taken the position that an IGSA is a type of procurement [contract] rather than a cooperative agreement.

[*Id.*]

In support of this position, the Homan Memorandum cites a footnote from a memorandum by Michael J. Davidson (the "Davidson Memorandum"), which is dated February 7, 2013. *See 2018 OIG Report* at 20 n. 9 (quoting Michael J. Davidson, Chief, CALD, OPLA, ICE, to William C. Randolph, Director and Head of Contracting Activity, OAQ, ICE, *Funding Intergovernmental Service Agreements*, 1 n.1 (Feb. 7, 2013) ("IGSAs are not grants or cooperative agreements")).

3

Other than this citation and quotation, the Davidson Memorandum is not included in the Inspector General's Report, and the Davidson Memorandum does not appear to be publicly available. *See generally 2018 OIG Report.*

The Court previously issued an Order granting in part and denying in part the Defendants' Motion to Dismiss. [Dkt. 199.] In that Order, the Court interpreted the Homan Memorandum to mean that ICE "has long taken the position that the UAR does not govern the IGSAs (like the Agreement [with Clay County]) in the first instance since it considers the agreements to be procurement contracts[.]" [*Id.* at 21.] The Court then reasoned that "Homan's statement supports Plaintiffs' position that ICE's express disregard of UAR requirements with respect to the Agreement is contrary to law" and ultimately determined that Counts III and IV state claims for relief under the Administrative Procedure Act ("APA"). [*Id.*]

The Plaintiffs' Motion to Compel Completion of the Administrative Record is now pending before the Court. [Dkt. 251.] In that motion, the Plaintiffs argue that the Homan Memorandum, the Davidson Memorandum, and "any other documents and communications relating to the policy decision set forth or cited in those memoranda" are part of the Administrative Record but have not been included in the Administrative Record that was certified as complete by ICE in this litigation. [Dkt. 251-1 at 2.] The Defendants oppose the Plaintiffs' Motion to Compel, [dkt. 256], and the Plaintiffs filed a reply in support of their motion, [dkt. 259]. The Court has reviewed the briefing and now issues the following decision.

## II. APPLICABLE LEGAL STANDARD

The APA authorizes a reviewing court to set aside agency action found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The reviewing court must "review the whole record or those parts of it cited

by a party." 5 U.S.C. § 706.  Therefore, review focuses on "the administrative record already in existence," *Camp v. Pitts*, 411 U.S. 138, 142 (1973), rather than on the materials produced in discovery like a typical civil case, *Bodo v. McAleenan*, 2019 WL 3776064, at *5 (N.D. Ill. Aug. 12, 2019) (citing *USA Group Loan Services, Inc. v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996)).

"The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." *Miami Nation of Indians of Indiana v. Babbitt*, 979 F. Supp. 771, 775 (N.D. Ind. 1996).  The agency is responsible for compiling the administrative record, and there is a strong presumption that the administrative record as furnished by the agency is complete. *Univ. of Colorado Health at Memorial Hosp. v. Burwell*, 151 F. Supp. 3d 1, 12-13 (D.D.C. 2015). Plaintiffs may overcome this presumption by "identifying reasonable, non-speculative grounds for their belief that the documents" they seek to add to the administrative record "were considered by the agency and not included in the record." *Id.* at 13 (cleaned up).  Plaintiffs also must "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record." *Id.*

### III. DISCUSSION

The Plaintiffs contend that the Defendants have withheld three categories of documents that are part of the Administrative Record and that the Court therefore must consider in ruling on the merits of Counts III and IV in this case: (1) the Homan Memorandum; (2) the Davidson Memorandum; and (3) "any other documents and communications relating to the policy decision set forth or cited in those memoranda." [Dkt. 251-1 at 2.] The Plaintiffs argue that these documents "memorailiz[e] ICE's policy not to follow the UAR or the Federal Acquisition Regulations . . . with respect to payments to Clay County" and that ICE "at a minimum indirectly considered [these

5

documents] when it continued to make payments to the Jail and obligated hundreds of thousands of dollars to the County through at least September 2024 in violation of the UAR." [*Id.* at 6, 7.] They also argue that the Court's reliance on the Homan Memorandum in the Order on the Defendants' Motion to Dismiss supports a conclusion that the Homan Memorandum will be relevant to the Court's ultimate decision in this case and therefore must be part of the Administrative Record. [*Id.* at 7-8.] To the extent the Defendants claim that these documents are privileged, the Plaintiffs argue that they should produce a privilege log that specifically lists the privileged documents and explains their basis for asserting that privilege. [*Id.* at 9-11.]

In response, the Defendants note that there is a presumption of regularity when an agency certifies an administrative record as complete, and they argue that the Plaintiffs have not met their burden of overcoming that presumption with reasonable, non-speculative grounds supporting their assertion of incompleteness. [Dkt. 256 at 5-6.] They argue that the Court's reliance on the Homan Memorandum in ruling on the Motion to Dismiss is not determinative of the present motion and instead reflects the different procedural postures of the two motions. [*Id.* at 9.] They further argue that the documents are protected by attorney-client privilege and deliberative process privilege, that producing a privilege log is not necessary because privileged documents are non-discoverable, and that deliberative and pre-decisional discussions are by nature not part of the administrative record.[2] [*Id.* at 10-16.]

---

[2] The Defendants also argue that the Plaintiffs have not shown that the Administrative Record should be supplemented, which would require a showing that the complexity of the case requires the additional materials, that the agency acted in bad faith, or that the record lacks explanation so as to frustrate judicial review. [Dkt. 256 at 7.] However, the Plaintiffs seek *completion* of the Administrative Record, which seeks inclusion of documents that were considered by ICE but that are not yet included in the Administrative Record, rather than *supplementation* of the Administrative Record, which would require the Court to consider additional documents that were outside the scope of ICE's decision-making process but that nevertheless should be considered on judicial review. *See Univ. of Colorado Health at Memorial Hosp.*, 151 F. Supp. 3d at 13

In reply, the Plaintiffs note that ICE's alleged policy of abdicating its responsibilities under the UAR is at the foundation of their claims in Counts III and IV, and they argue that "[i]n order to meaningfully adjudicate this dispute, both Plaintiffs and this Court need access to ICE's memoranda and communications memorializing its policy of not following these federal regulations, along with 'materials relevant to the agency's contemporaneous construction' of this policy[.]" [Dkt. 259 at 3-4.] They also clarify that they believe the Defendants should produce a privilege log so that the Court can determine the validity of any privilege claims the Defendants may assert over the contested documents. [*Id.* at 5-7.]

The Court notes at the outset that "a document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record" and that "the administrative record is to consist of 'all documents and materials directly or indirectly considered by the agency' . . . including internal memoranda, guidelines, or hearing transcripts, that are necessary to complete the administrative record." *Miami*, 979 F. Supp. at 777. However, pre-decisional and deliberative communications between an agency's staffers generally fall outside the administrative record, since they merely reflect the agency's internal, frank discussions before reaching a final decision on a specific issue. *See Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019).

---

(comparing the legal standard for completion of the administrative record with the more stringent standard for supplementation of the administrative record). Given these circumstances, the Court need not address the Defendants' argument regarding supplementation and will instead consider only whether the Plaintiffs have carried their burden on the issue of completion. The Defendants also argue that the Court should reject any argument by the Plaintiffs that ICE erred by failing to consider the Homan Memorandum in making the final decisions at issue in this case. [Dkt. 256 at 9-10.] In their reply, the Plaintiffs clarify that they make no such argument, so the Court will not address that issue either. [Dkt. 259 at 4-5.]

Having considered the Parties' arguments, the Court finds that the Homan Memorandum was considered by ICE's final decisionmaker and therefore is part of the Administrative Record for Counts III and IV.  The Homan Memorandum is not a deliberative or pre-decisional document.  Instead, it is ICE's official response to an Inspector General inquiry into ICE's alleged failure to follow federal procurement guidelines when contracting for non-citizen detention services.  That response has been published on the Department of Homeland Security's website along with the final version of the Inspector General's Report.  To the extent that the Homan Memorandum may have been privileged at one time, the Court finds that ICE waived that privilege by producing it in response to a public inquiry and allowing it to become published in full.  *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 361 (2d Cir. 2005) ("We cannot allow the Department to make public use of the Memorandum when it serves the Department's ends but claim the attorney-client privilege when it does not.  Because the Department . . . incorporated the OLC Memorandum into the Department's policy, the attorney-client privilege cannot here be invoked to bar that Memorandum's disclosure.").

Further, the Homan Memorandum memorializes the very policy that is the foundation for the Plaintiffs' claims in Counts III and IV—*i.e.*, that ICE has determined that the UAR does not apply to agreements like the one at issue in this case.  It was articulated by ICE's Acting Director in response to an Inspector General Report that found structural issues with the way ICE oversees federal procurements for non-citizen detention services like the one with Clay County.  ICE's official policy position, as reflected in the Homan Memorandum, that it has no duties under the UAR with respect to those agreements very likely influenced the agency's decision-making process with respect to its duties under the UAR arising from its detention agreement with Clay County.  *See Bethlehem Steel v. EPA*, 638 F.2d 994, 1000 (7th Cir. 1984) (a complete administrative record

8

should include all materials that "might have influenced the agency's decision," and not merely those on which the agency expressly relied upon in reaching its final decision). For these reasons, the Court concludes that the Plaintiffs have made a reasonable, non-speculative showing that the Homan Memorandum influenced ICE's final decisions at issue in this case and is part of the Administrative Record for Counts III and IV.

The Court cannot reach the same conclusion at this time with respect to the Davidson Memorandum. The Court has not had the opportunity to review this document, and it is unclear in what context that document was drafted. Specifically, it is not clear whether the Davidson Memorandum was a deliberative or pre-decisional document, whether it includes topics that are wholly unrelated to the issues in this lawsuit, or whether at least some portions of the document remain privileged despite ICE's citation to the document in the Homan Memorandum. Therefore, **within 14 days of the issuance of this Order**, the Court **ORDERS** the Defendants to file the Davidson Memorandum *ex parte* for the Court's review and file a separate memorandum detailing any privilege argument asserted regarding that document. Plaintiffs' request to include the Davidson Memorandum in the Administrative Record remains **UNDER ADVISEMENT**.

Finally, the Court concludes that the Plaintiffs have not met their burden of showing that the third category of documents they seek—"any other documents and communications relating to the policy decision set forth or cited in [the Homan Memorandum or the Davidson Memorandum]"—is part of the Administrative Record. The fact that this request does not identify the documents with any level of specificity and instead refers to them as a broad category of documents with sweeping and generic terms supports the Court's conclusion. Such discovery requests may be appropriate in civil lawsuits under Federal Rule of Civil Procedure 26, but discovery in APA cases is narrower and requires the requesting party to make a reasonable, non-speculative showing that

such documents were considered by the agency's final decisionmaker. *See Univ. of Colorado Health at Memorial Hosp.*, 151 F. Supp. 3d at 13 (holding that plaintiffs in an APA case must "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record"). For these reasons, the Court finds that with respect to this category of documents, the Plaintiffs have not overcome the presumption of regularity when an agency certifies an administrative record as complete, and the Plaintiffs' request to include this broad category of documents in the Administrative Record is therefore **DENIED**.

## IV. CONCLUSION

As explained above, the Plaintiffs' Motion to Compel Completion of the Administrative Record on Counts III and IV is **GRANTED in part** and **DENIED in part**. [Dkt. 251.] The Court finds that the Homan Memorandum is part of the Administrative Record, and Plaintiffs' motion is **GRANTED** as to this document. The Court will set a deadline for the Defendants to serve an Amended Administrative Record after ruling on an issue that remains under advisement, as further set forth below.

The Court does not have enough information to determine whether the Davidson Memorandum, in whole or in part, is part of the Administrative Record. Therefore, **within 14 days of the issuance of this Order**, the Court **ORDERS** the Defendants to file the Davidson Memorandum *ex parte* for the Court's review and file a separate memorandum detailing any privilege argument asserted regarding that document. Plaintiffs' request to include the Davidson Memorandum in the Administrative Record remains **UNDER ADVISEMENT**.

The Court also finds that the Plaintiffs have not shown that the third category of materials identified in their motion—"any other documents and communications relating to the policy decision set forth or cited in [the Homan Memorandum or the Davidson Memorandum]"—is part of the administrative record for Counts III and IV. Accordingly, the Plaintiffs' motion is **DENIED** as to these documents.

    **SO ORDERED**.

Date: 9/19/2025

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email