UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARIBEL XIRUM, <br> JAVIER JAIMES JAIMES, <br> BAIJEBO TOE, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE), <br> U.S. DEPARTMENT OF HOMELAND SECURITY (DHS), <br> KRISTI NOEM, <br> TODD M. LYONS, <br> MONICA S. BURKE, <br> RICARDO A. WONG, <br> TRAVIS GRAHAM, <br> ANGELINA RAMOS, <br> VIRGINIA SUTTER, <br> JENNIFER M. FLATER, <br> MIKE MELENDEZ, <br><br> Defendants. | No. 1:22-cv-00801-TWP-KMB |

### SECOND ORDER ON PLAINTIFFS' MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD ON COUNTS III AND IV

The Plaintiffs filed a Motion to Compel Completion of the Administrative Record on Counts III and IV of the Amended Complaint. [Dkt. 251.] The Court previously issued an Order granting in part and denying in part the Plaintiffs' motion ("First Order"), but the Court kept an issue regarding the Davidson Memorandum under advisement until the Defendants submitted the Davidson Memorandum *ex parte* and provided further argument as to whether it is privileged. [Dkt. 261.] Having now reviewed the Davidson Memorandum and the Defendants' arguments regarding privilege, [dkt. 266], the Court concludes that the Davidson Memorandum is not part of the Administrative Record. Because the Court reaches this conclusion on grounds not related to

Defendants' arguments regarding privilege, the Court need not determine whether the Davidson Memorandum is subject to privilege.

## I.     BACKGROUND

The Court set forth the relevant background necessary to understand the Plaintiffs' Motion to Compel in its First Order and incorporates that background by reference herein. [*See* dkt. 261 at 1-4.] The Court includes a portion below that is particularly relevant to the issue still under advisement.

Some of the Plaintiffs' allegations in this lawsuit cite general findings that were made in a February 21, 2018, report by the Department of Homeland Security Office of the Inspector General titled "Immigration and Customs Enforcement did not Follow Federal Procurement Guidelines when Contracting for Detention Services" (the "Inspector General's Report"). *See* DHS Off. Of Inspector Gen., *Immigration and Customs Enforcement Did Not Follow Federal Procurement Guidelines when Contracting for Detention Services*, OIG-18-53 at 10-14 (Feb. 21, 2018) ("2018 OIG Report"). The Inspector General's Report is publicly available on the Department of Homeland Security's website. *See* https://www.oig.dhs.gov/sites/default/files/assets/2018-02/OIG-18-53-Feb18.pdf (last visited December 1, 2025). Included in the Inspector General's report is the Homan Memorandum, which ICE's Acting Director wrote in response to an earlier draft of the Inspector General's Report. [Dkt. 199 at 20.] The Homan Memorandum states that ICE's Intergovernmental Services Agreement ("IGSA") authority stems from 8 U.S.C. § 1103(a)(11)(A) and that its IGSAs "are not generally required to follow the Federal Acquisition Regulation (FAR)." [*Id.*] The Homan Memorandum further states that

> [d]espite the [the Inspector General's] conclusion ICE has never defined IGSAs nor followed the FAR and or federal contracting guidelines contained in part 200 of Title 2 of the Code of Federal Regulations, both ICE [Office of Acquisition Management] and the Office of the Principal Legal Advisor (OPLA) have long

> taken the position that an IGSA is a type of procurement [contract] rather than a cooperative agreement.

[*Id.* (footnote omitted).]

The Plaintiffs' motion asked the Court to compel the Defendants to add three categories of documents to the Administrative Record: (1) the Homan Memorandum; (2) the Davidson Memorandum; and (3) "any other documents and communications relating to the policy decision set forth or cited in those memoranda." [Dkt. 251-1 at 2.] In its First Order, the Court granted Plaintiffs' motion as to the Homan Memorandum, denied the motion as to the third category of documents, but kept the Plaintiffs' motion as to the Davidson Memorandum under advisement. [*Id.* at 10-11.] As ordered by the Court, the Defendants filed *ex parte* the Davidson Memorandum and a brief detailing their position that the Davidson Memorandum is subject to privilege. [Dkt. 266.]

## II.     APPLICABLE LEGAL STANDARD

The Administrative Procedure Act ("APA") authorizes a reviewing court to set aside agency action found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The reviewing court must "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Therefore, review focuses on "the administrative record already in existence," *Camp v. Pitts*, 411 U.S. 138, 142 (1973), rather than on the materials produced in discovery like a typical civil case, *Bodo v. McAleenan*, 2019 WL 3776064, at *5 (N.D. Ill. Aug. 12, 2019) (citing *USA Group Loan Services, Inc. v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996)). "The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." *Miami Nation of Indians of Indiana v. Babbitt*, 979 F. Supp. 771, 775 (N.D. Ind. 1996). The agency is responsible for compiling the administrative record, and there is a strong presumption that the administrative record as furnished

by the agency is complete. *Univ. of Colorado Health at Memorial Hosp. v. Burwell*, 151 F.Supp.3d 1, 12-13 (D.D.C. 2015). Plaintiffs may overcome this presumption by "identifying reasonable, non-speculative grounds for their belief that the documents" they seek to add to the administrative record "were considered by the agency and not included in the record." *Id.* at 13 (cleaned up). Plaintiffs also must "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record." *Id.*

### III.   DISCUSSION

The issue kept under advisement by the Court's First Order is whether the Davidson Memorandum is part of the Administrative Record. In the briefing on Plaintiffs' motion, the Parties did not present many specific arguments regarding each of the three categories of documents the Plaintiffs sought to have included in the Administrative Record. They instead discussed the three categories together. Thus, for example, the arguments presented by the Parties regarding inclusion of the Homan Memorandum are largely the same as those regarding inclusion of the Davidson Memorandum, which the Court set forth in detail in its First Order. [Dkt. 261 at 5-7.] The Court briefly summarizes those arguments again here.

The Plaintiffs argue that the documents it seeks to add to the Administrative Record "memorailiz[e] ICE's policy not to follow the UAR or the Federal Acquisition Regulations . . . with respect to payments to Clay County" and that ICE "at a minimum indirectly considered [these documents] when it continued to make payments to the Jail and obligated hundreds of thousands of dollars to the County through at least September 2024 in violation of the UAR." [Dkt. 251-1 at 6, 7.] They also argue that the Court's reliance on the Homan Memorandum in the Order on the Defendants' Motion to Dismiss supports a conclusion that the additional documents will be

relevant to the Court's ultimate decision in this case and therefore must be part of the Administrative Record. [*Id.* at 7-8.]

In response, the Defendants note that there is a presumption of regularity when an agency certifies an administrative record as complete, and they argue that the Plaintiffs have not met their burden of overcoming that presumption with reasonable, non-speculative grounds supporting their assertion of incompleteness. [Dkt. 256 at 5-6.] They further argue that the documents, including the Davidson Memorandum, are protected by attorney-client privilege and deliberative process privilege. [*Id.* at 10-16.]

In reply, the Plaintiffs note that ICE's alleged policy of abdicating its responsibilities under the UAR is at the foundation of their claims in Counts III and IV, so they argue that "[i]n order to meaningfully adjudicate this dispute, both the Plaintiffs and this Court need access to ICE's memoranda and communications memorializing its policy of not following these federal regulations, along with 'materials relevant to the agency's contemporaneous construction' of this policy[.]" [Dkt. 259 at 3-4.]

After considering the Parties' arguments, the Court found in its First Order that the Homan Memorandum should be included in the Administrative Record because it was likely considered by ICE when making the decisions challenged in Counts III and IV. [Dkt. 261 at 8.] The Court reached this conclusion because the Homan Memorandum "was articulated by ICE's Acting Director in response to an Inspector General Report that found structural issues with the way ICE oversees federal procurements for non-citizen detention services like the one with Clay County," and sets forth "ICE's official policy position . . . that it has no duties under the UAR with respect

to those agreement." [*Id.*]  The same cannot be said for the Davidson Memorandum.[1]  To carry their burden of "identifying reasonable, non-speculative grounds for their belief" that the Davidson Memorandum was "considered by the agency," *Univ. Colo. Health*, 151 F.Supp.3d at 13 (cleaned up), the Plaintiffs rely on the fact that the Homan Memorandum cites the Davidson Memorandum in a footnote and, relatedly, that the Davidson Memorandum is likely relevant to the Court's ultimate decision.  But neither of these, without more, constitute a reasonable basis to believe that the Davidson Memorandum was considered by ICE when making the decisions challenged here.

First, even if a document is relevant to the Plaintiffs' claims, it does not necessarily follow that it is part of the Administrative Record.  *See Franks v. Salazar*, 751 F.Supp.2d 62, 69 (D.D.C. 2010) ("[T]he materials' purported relevance . . . [does not] constitute concrete evidence that [the defendant] considered the materials, either directly or indirectly.").  Again, the legal inquiry in the APA context is whether the document was "considered by the agency." *Univ. Colo. Health*, 151 F.Supp.3d at 13.  It is not, as the Plaintiffs suggest by citing Federal Rule of Civil Procedure 26(b)(1), [dkt. 251-1 at 7], the relevance and proportionality standards governing discovery in the typical civil case.  *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1081 (7th Cir. 2016) ("Generally, discovery is not appropriate for claims brought under the APA since review of an agency's decision is confined to the administrative record.").

Second, the fact that the Homan Memorandum, which the Court has now ruled is part of the Administrative Record, cites the Davidson Memorandum does not alone create a reasonable belief that the Davidson Memorandum was considered by ICE when making the decisions

---

[1] Because the Court concludes that the Davidson Memorandum is not part of the Administrative Record on other grounds, the Court does not reach the Defendants' argument that the Davidson Memorandum is subject to privilege.  Given that the Davidson Memorandum may be privileged and was filed *ex parte*, the Court's analysis does not disclose anything about the Davidson Memorandum that is not already public.

challenged by the Plaintiffs here. The Homan Memorandum cites the Davidson Memorandum to support the proposition that ICE "has long taken the position that an IGSA is a type of procurement rather than a cooperative agreement." [Dkt. 199 at 21.] But "the mere mention of a document in the agency's decision or the record does not always mean, *ipso facto*, that the agency considered the document." *Oceana*, 290 F.Supp.3d at 79; *see Franks*, 751 F.Supp.2d at 70 ("[A]s courts in this District have held, references to documents in the administrative record do not prove that that the documents were 'before' the deciding agency.").

Notably, the Davidson Memorandum is two steps removed from the decisions challenged by the Plaintiffs here—namely, ICE's payments to Clay County (Count III) and ICE's alleged abdication of its to duty to ensure Clay County appropriately uses its federal funds (Count IV). [Dkt. 129 at 76-82.] The Plaintiffs made a reasonable showing with respect to the Homan Memorandum because it embodied "ICE's official policy position . . . that it has no duties under the UAR with respect to [] agreement[s]" like the one it has with Clay County. [Dkt. 261 at 8.] But it is much more speculative to believe that ICE considered every document cited in the Homan Memorandum. This is particularly true given that the Davidson Memorandum was cited merely in support of the historical assertion—"that ICE has long taken the position that an IGSA is a procurement rather than a cooperative agreement," [Dkt. 199 at 21]—rather than to support the Homan Memorandum's analysis or reasoning. This makes it even more speculative that the Davidson Memorandum was considered by ICE. *See Taylor Energy Co. LLC v. United States*, 2021 WL 538052, at *2 (D.D.C. Feb. 15, 2021) ("[A]bsent further specificity, the Court does not find that this single citation for a non-substantive point necessitates the entire book's inclusion in the record.").

Ultimately, if the Court accepted the Plaintiffs' contention that the Davidson Memorandum was part of the Administrative Record merely because it was cited by another document in the Administrative Record, the Plaintiffs could then argue that every document cited in the Davidson Memorandum must also be included in the Administrative Record. But at some point, without something more, it becomes far too speculative that such documents "were considered by the agency." *Univ. Colo. Health*, 151 F.Supp.3d at 13. The Court concludes that is the case here.

In sum, the Plaintiffs have not "overcome the strong presumption of regularity" by pointing to "non-speculative, concrete evidence" that the Davidson Memorandum was "directly or indirectly considered by the actual decision makers." *Taylor Energy Co.*, 2021 WL 538052, at *2. Thus the Plaintiffs' request to compel the Defendants to include the Davidson Memorandum in the Administrative Record is denied.

### IV.  CONCLUSION

In its First Order, the Court concluded that the Homan Memorandum is part of the Administrative Record and that any other documents and communications relating to the policy decision set forth in the Homan or Davidson Memoranda were not part of the Administrative Record. [Dkt. 261.] For the reasons explained herein, the Court now concludes that the Davidson Memorandum is not part of the Administrative Record. Because the Court reaches that conclusion on grounds not related to Defendants' arguments regarding privilege, the Court need not determine whether the Davidson Memorandum is subject to privilege.

The Court **ORDERS** the Defendants to serve the Plaintiffs with an Amended Administrative Record that includes the Homan Memorandum and file a Notice of Service with the Court by **December 8, 2025**.

With the Administrative Record now complete, the Court must adopt an appropriate briefing schedule for the Parties' anticipated cross-motions for summary judgment. [*See* dkt. 246.] The Parties shall meet and confer and file a joint proposed cross-motion briefing schedule by **December 10, 2025**. In proposing that schedule, the Parties shall be mindful of the age of this case and propose a schedule that will expedite briefing on the anticipated cross-motions to the maximum extent possible.

This case is set for a Telephonic Status Conference on **December 16, 2025, at 3:00 p.m. (Eastern),** before U.S. Magistrate Judge Kellie M. Barr. The Court will contact counsel through the Court's electronic filing system with the call-in information to be used to participate in the conference.

**SO ORDERED.**

Date: 12/1/2025

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All counsel electronically registered via CM/ECF